### BASSETT et al. v. FAIRCHILD et al.*

S. F. No. 1366; July 2, 1900.

61 Pac. 791.

**Appeal.**—**An Assignment of Error not Discussed in** appellant's brief will not be reviewed.

**Corporation—Compensation of Director.**—Where a Director of a corporation performed services as its manager not pertaining to

---

*For subsequent opinion in bank, see 132 Cal. 637, 52 L. R. A. 611, 64 Pac. 1082.

his duties as director, he is entitled to recover what such services were reasonably worth, though no rate of compensation was fixed by the board of directors in advance of the performance of the services.

Corporation—Compensation of Director.—Where a Director Rendered services for the corporation as manager, which were outside of his duties as director, for which he received payment without the authority from the board, such payment might be properly ratified thereafter; and the directors cannot be held liable therefor, as for a wrongful expenditure of funds.

Corporation—Quorum—Interested Director.—Under Civil Code, section 308, declaring that a majority of the directors of a corporation form a quorum, the passage of a resolution ratifying payment of compensation to one of their members for services outside his duties as a director was not invalidated by the fact that such director was present when the vote was taken, though his presence was necessary to constitute a quorum, where the resolution was passed without his vote.

Corporation.—Stockholders may Ratify the Action of the board of directors in ratifying a payment to a director for services outside his duties as a director, and the fact that such director was present at the stockholders' meeting at which action thereon was taken did not invalidate it, a majority of the stockholders, independent of such interested stockholder, having voted in favor of the resolution.

Corporation.—The Fact That Such Ratification was a ratification of all the acts of the directors since the preceding stockholders' meeting could not be urged against its validity as a ratification of such payment, where the objection was made to the adoption of the resolution at the meeting on the ground that it would cover such specific payment, since that phase of the question was thereby distinctly presented and voted on by the stockholders.

APPEAL from Superior Court, City and County of San Francisco.

Action by A. C. Bassett and another against J. A. Fairchild and others. From a judgment in favor of plaintiffs and from an order denying their motion for a new trial defendants appeal. Reversed.

Frank Shay, C. H. Wilson and E. W. McKinstry for appellants; Gunnison, Booth & Bartnett for respondents.

McFARLAND, J.—It is averred in the complaint that each of the plaintiffs is the owner of at least five shares of the capital stock of the corporation defendant, the Bitumen Consolidated Mining Company, the capital stock being $300,000, divided into shares of $100 each, and that this action is

brought on behalf of themselves and other stockholders. It is also averred that, during the times when the alleged wrongs were committed, defendants Fairchild, Perine, Walrath and Miles were directors of the corporation defendant, the whole number of directors being six, and the other two being plaintiff Bassett and one Swift. It is further averred that said defendants, being a majority of the board of directors, improperly expended certain moneys of the corporation, and the purpose of the action is to recover from them the amount of money alleged to have been thus expended. The court rendered judgment against Fairchild, Perine and Walrath for $10,729.90, which sum consists of $8,665.80 found to have been improperly expended, and legal interest thereon for several years, and against defendant Miles for $7,129.90 for money, and interest thereon, found to have been improperly expended by the directors by acts in which he participated. From the judgment and from an order denying their motion for a new trial the defendants appeal.

The court found the appellants liable for $1,888.05 paid out by them as expenses incurred in defending a certain action brought in the superior court by the San Luis Bituminous Rock Company against the defendant corporation herein and certain others of the individual defendants herein. The ground of this finding is that, owing to the nature of that action, the defendants therein other than the corporation should have borne the expenses of the litigation; and, as this finding is not discussed in appellants' brief, it may be dismissed without further notice.

The chief item of appellants' liability allowed by the court which is contested by appellants is $6,475 paid defendant Fairchild for services as general manager of the corporation defendant before his compensation therefor had been fixed, which sum, with interest thereon, makes up the main amount of the judgment. The record shows that after the case had been submitted to the trial court that court made an order, on August 29, 1896, that judgment be entered for plaintiffs for $1,888.05 alone. In a written opinion attached to one of appellants' briefs, the learned judge of the lower court gives his reasons, which we think are exceedingly cogent, for not allowing judgment for the $6,475 paid to Fairchild. But afterward the court made findings and ordered judgment for the $6,475 and interest, in addition to the said $1,888.05,

and, under an amendment to the complaint, gave judgment, also, for an additional $332.25, which will be referred to hereafter, and ordered that $2,000 be allowed plaintiffs as a counsel fee, to be paid out of the judgment by a receiver who was appointed to collect the same. There is no averment, or proof, or finding of any fraud committed by appellants, but the theory of the complaint seems to be that in authorizing the payment of the said money to Fairchild the appellants acted with gross negligence. The appellants admit the payment of this money, and justify it. The findings seem to follow the theory of the complaint; but so far as they may be construed to find that appellants were guilty of such negligence as would render them liable on the ground of negligence alone, or that they willfully intended to injure the corporation for their own personal gain, they are not supported by evidence. However, the findings on these points need not be closely scrutinized, for the order denying the motion for a new trial contains this language: ''There is no evidence in this case that either of the defendants Perine, Walrath or Miles acted for their own private gains. If any finding bears that construction, I regret it, and, if it were necessary to support the judgment, I would grant a new trial. Neither, under my views of the law, is the finding as to negligence material. Perine, Walrath and Miles are held liable upon the ground that they voted money of the corporation to Fairchild without authority of law. If it be assumed that the corporation was indebted to Fairchild for past services, none of the defendants are liable for the money paid to him. . . . . Upon the main question, whether Fairchild had any legal claim for compensation before his salary was fixed by the board, I see no reason to change the views expressed by me in deciding the case.'' It is apparent, therefore, that the judgment was based on the principle that the payment of the money to Fairchild was unlawful because it was paid before his salary as general manager had been fixed, and that, as will be seen hereafter, it was so entirely illegal and ultra vires that it could not be ratified or made valid by any subsequent act of either the directors or the stockholders. We do not think that the judgment can be affirmed on that principle, under the facts of this case.

The corporation defendant was organized in September, 1891. Its main purpose was to control the mining and mar-

keting of bituminous rock to be taken from several different mines or deposits of bitumen. It appears that these several mines were mainly owned by the persons who formed the corporation defendant, and became its stockholders and directors. The corporation took leases from the owners of these several mines, by the terms of which it was to give them a royalty of one dollar a ton for every ton of bitumen taken from the mines. It seems quite apparent that the main profit which the organizers of the corporation expected to receive was to come through the royalty of one dollar per ton to be paid for the rock taken from the mines which they owned; and, in this connection, we think that the court erred in sustaining an objection to the question asked Fairchild on the witness-stand, whether at the time of the organization of the corporation ''it was designed, intended or expected by the directors of the Bitumen Consolidated that, outside of the royalties, there would be large earnings or dividends.'' Immediately after the organization of the corporation, and in September, 1891, Fairchild was duly elected vice-president and general manager, and remained such during the time mentioned in the complaint. He immediately commenced to perform his duties as general manager, which duties were numerous and onerous, and occupied almost his entire time. The various kinds of work which he did as manager fully appear in the evidence, and need not be here given in detail. It is sufficient to say that his work included direction and supervision of the mining operations in the various leased mines; the supplies required; contracting for hauling rock from mines to cars; purchasing sacks for the rock; attending to shipping receipts and collecting moneys; securing transportation facilities; chartering vessels for shipping rock to points on the northern Pacific coast; seeing that cars which came to San Francisco were properly loaded, and delivered in proper shape to purchasers; looking after office management; and attending to all ''business of the corporation which come along from day to day.'' Before his employment he had visited points as far north as Vancouver, British Columbia, in the interest of the use and sale of bituminous rock, and had become acquainted with public officials and others having control of street paving, and was thus enabled to procure contracts with them for sale of the rock of the corporation. There is no doubt that his services were highly valuable, and the evidence

abundantly shows that they were worth what he received, and there is no doubt that they were of such a character as to preclude any reasonable supposition that they were to be gratuitous. But there was no resolution of the board of directors and no express contract determining what compensation he should have for his services as manager prior to November 9, 1892, and for this reason it is contended by respondents that he cannot legally have any compensation prior to that date. Fairchild expected to receive compensation for his work as manager, the amount to depend somewhat upon the volume of business that would be developed; and the testimony of Walrath, president, and Perine, treasurer, of the corporation, shows that it was not expected by them or the other directors that he was to work gratuitously. Moreover, his work as manager was done with the knowledge of the directors, but there was no formal action taken on the subject until November 9, 1892. Some time before that date the president paid Fairchild, on account of his services, out of the money of the corporation, $3,600; and on November 9, 1892, the board of directors passed a resolution which, after reciting that Fairchild had been in the employ of the corporation since its organization, "as managing agent and manager," and had been paid by the president $3,600 for his services, declared that "the act of said president in advancing and paying said J. A. Fairchild said sum of thirty-six hundred dollars on account of his services be, and the same is hereby, approved, ratified, and confirmed." There were present at this meeting four directors, who constituted a quorum; Fairchild was one of the four, but he did not vote on the resolution, which was passed by the votes of the other three. At this same meeting a resolution was passed reciting that Fairchild had been elected general manager in September, 1891, and had ever since been acting as such, without having his salary fixed, and declaring that his salary "be, and the same is hereby, fixed at the monthly sum of two hundred dollars per month from November 1, 1891, to April 1, 1892, and that thereafter he should receive a salary of seven hundred and fifty dollars per month, which should remain the same until changed by the board of directors." On the tenth day of January, 1893, there was a general meeting of the stockholders. At this meeting there were present stockholders representing two thousand five hundred and ten shares of

the capital stock, of three thousand shares; and by a resolution adopted by a majority of the shares, exclusive of those represented by Fairchild, it was resolved ''that all the acts of the board of directors and officers of this company for the past year be approved and ratified.''

The by-laws provide that ''the compensation and terms of office of all officers of the corporation (other than directors) shall be fixed and determined by the board of directors.'' This language does not, on its face, mean that the compensation must be expressly and definitely agreed upon and settled before performance of the services; but respondents contend that under the general law, established by judicial decisions, there can be no lawful allowance to an officer of a corporation for services, no matter what their character and value, where the amount of the compensation had been fixed prior to the rendition of the services. Many authorities on this subject have been cited on both sides, and they are, to some extent, conflicting. Most of those cited by respondents merely declare the rule that a ''director,'' as such, without some previous understanding, is not entitled to pay for services which are within the ordinary duties to be expected of him as director, although some of them, no doubt, apply the rule to other officers or agents who are also directors; but as to the last proposition the weight of authority and reason is the other way. As a general rule, when one person performs valuable services for another, whether the other be a corporation or a natural person, the law raises an implied promise to pay a reasonable compensation for the services, unless they are performed under circumstances which show an understanding that they were to be gratuitous. It frequently happens that one natural person performs valuable services for another natural person, for which the former cannot recover because circumstances show that they were rendered without any expectation of compensation. Now, it has been held that directors of corporations cannot, without previous express contract, receive compensation for such ordinary services as are usually rendered by directors without pay; for the common understanding, as declared by judicial decisions, is that such services are presumed to be rendered gratuitously. But that presumption does not apply to those onerous services performed by officers and agents of a corporation, though they be also directors, for which compensation is u n ly

demanded and allowed, and which could not reasonably be expected to be performed for nothing. The correct rule is stated by the United States supreme court in Fitzgerald Construction Co. v. Fitzgerald, 137 U. S. 98, 34 L. Ed. 608, 11 Sup. Ct. Rep. 36. In that case Fitzgerald, who was a director of a corporation and its treasurer, acted as superintendent and general manager, and as such did valuable work, "not at all pertaining to his office as director"; and the question was whether he was entitled to compensation for such work done before any compensation was fixed. The opinion of the court states that the trial court "instructed the jury that 'if Fitzgerald, the plaintiff, acted as superintendent, treasurer or general manager of said company, and transacted the usual business that devolves upon such officer of such a concern as that, with the knowledge and consent of the defendant' (during the time before compensation was fixed), there would be an implied agreement on the part of the defendant to pay what the services are reasonably worth, and afterward repeated this instruction more in detail, confining it to services as manager." The verdict was for Fitzgerald, and the judgment was affirmed. The court said: "The general rule is well stated by Mr. Justice Morton (since chief justice of Massachusetts) in Pew v. Bank, 130 Mass. 391, 395: 'A bank or other corporation may be bound by an implied contract in the same manner as an individual may. But, in any case, the mere fact that valuable services are rendered for the benefit of the party does not make him liable upon an implied promise to pay for them. It often happens that persons render services for others which all parties understand to be gratuitous. Thus, directors of banks and of many other corporations usually receive no compensation. In such cases, however valuable the services may be, the law does not raise an implied contract to pay the party who receives the benefit of them. To render such party liable as a debtor under an implied promise, it must be shown, not only that the services were valuable, but also that they were rendered under such circumstances as to raise the fair presumption that the parties intended and understood that they were to be paid for, or, at least, that the circumstances were such that a reasonable man, in the same situation with the party who receives and is benefited by them, would and ought to understand that compensation was to be paid for them.'

Tested by this rule, we think that the court fairly left it to the jury to determine whether Fitzgerald rendered services of such a character and under such circumstances that he was entitled to claim compensation therefor. It could not properly have been held, as matter of law, that he was so entitled.'' And if, under such circumstances, assumpsit would lie for the services, the board of directors would certainly have power to pay the reasonable value of such services. Rogers v. Railway Co., 22 Minn. 25, is a case directly in point. It is stronger in support of the proposition above stated than the case at bar, because the charter of the corporation in that case provided that the board of directors should appoint the officers, ''and fix their compensation for the services to be rendered.'' Rogers was a director and was appointed secretary of the corporation, and also acted as its land commissioner and attorney, and sued for the value of services rendered in such capacities. There had been no compensation fixed, nor any contract made, before the services were rendered; and it was contended there, as here, that no compensation could be recovered for past services. But it was held otherwise. The court said, among other things, as follows: ''The evidence showed that the plaintiff, while acting as land commissioner, was a member of the board of directors. If his services as land commissioner had been performed by him simply as a director, it might be that he could not recover for the same, since, in the absence of a special agreement for compensation, he would, according to many authorities, be presumed to have acted gratuitously. But the duties and labors of a land commissioner of a land-grant railroad company do not necessarily nor presumptively pertain to a director, as such. Indeed, it would be unreasonable to suppose that duties so onerous would be undertaken by one acting simply as a director without pay. For such extraordinary services, outside of and beyond his duties as director, a party may certainly recover, notwithstanding his directorship, for the reason that, even if he performs the duties of director gratuitously, these services are not a part of those duties''; citing cases. In Henry v. Railroad Co., 27 Vt. 435, there was a standing resolution of the board that a director should not receive more than two dollars per day for special services; yet a director was allowed to recover for services which were outside his duties as a director in an amount much greater than could have been allowed

under the resolution for services as director. The court said: "There are services which may be rendered for the benefit of a corporation, the performance of which may be delegated by the directors to other persons. For that purpose the directors may employ, as their agents, those who are not members of the corporation, or they may employ one of their own number. A director is not incapacitated to discharge those duties, and receive the same compensation which other agents would be entitled to recover. . . . . In rendering those services the plaintiff was not acting in his official capacity as director, but as the agent of the corporation, and his compensation is no more limited by that vote than it would be if the services had been rendered by others who were not directors." In Sawyer v. Bank, 6 Allen (Mass.), 209, the court, speaking of the circumstances under which the presumption arises that officers of a corporation are to be paid for their services, says: "Such a presumption arises in reference to any species of work, labor or employment which is usually and commonly the subject of hire and reward, and paid for, whether any specific bargain is or is not made concerning it." In Beach on Private Corporations, section 208, the author says: "When the charter of a corporation provides that certain officers may be elected, and their salary fixed, by a board of directors, and a president is thus elected, but without a salary named, the law raises an assumpsit on the part of the corporation to pay a reasonable compensation for his services rendered after election." In Morawetz on Corporations, section 508, the author says: "If a director is properly employed to perform services which do not pertain to his office as director, he is entitled to such compensation as has been agreed upon, or as the services are reasonably worth." There are many other authorities to the same effect as those above cited, but they are too numerous to refer to here: See Ang. & A. Corp., sec. 317; Pew v. Bank, 130 Mass. 391; Chandler v. Bank, 13 N. J. L. 255; Shackelford v. Railroad Co., 37 Miss. 209; Santa Clara Min. Assn. v. Meredith, 49 Md. 389, 33 Am. Rep. 264; Cheeney v. Railway Co., 68 Ill. 575, 18 Am. Rep. 584; First Nat. Bank v. Drake, 29 Kan. 311, 44 Am. Rep. 646; Severson v. Milling Co., 18 Mont. 13, 44 Pac. 79; Felton v. Mining Co., 16 Mont. 81, 40 Pac. 70. There was nothing decided in McCarthy v. Water Co., 111 Cal. 328, 43 Pac. 956, that conflicts with the views hereinbefore stated. There the plaintiff, who

was a director of the corporation defendant, sought to recover of the latter the value of services rendered without any previously fixed salary or compensation; and a judgment in his favor was reversed merely because the trial court had erroneously excluded evidence offered by the defendant which "tended to show the relations of the parties, . . . . and to throw light on the question whether or not it was intended that he should have compensation." The court referred to Barstow v. Railroad Co., 42 Cal. 465, which was also an action brought by a director to recover for services rendered before his compensation had been fixed, and quoted from the opinion in the latter case as follows: "The situation of the parties at the time—the relations, if any, in which they stood, of a business character or otherwise—are important to be known and considered in order to arrive at a correct solution of the ultimate question involved." In neither the McCarthy case nor the Barstow case is there anything in the nature of a decision that there cannot be a recovery by an officer of a corporation who is also a director unless his salary had been previously fixed, but the contrary in both cases is assumed and necessarily decided. In the McCarthy case it is assumed that plaintiff could have recovered on "an implied contract arising out of, and inferable from, the situation and relation of the parties"; and it is further said that "respondent, being a director of appellant, was not entitled to compensation for services rendered the corporation, unless the circumstances were such as to raise an implied assumpsit to pay what they were reasonably worth."

We conclude, therefore, upon the authorities above noticed, as well as upon reasonable and just principles, that Fairchild was not precluded from having a legal claim for the value of his services merely because that value had not been fixed beforehand; that, therefore, the allowance of his claim by the board of directors on November 9th—there being no fraud in the transaction—was not an illegal and invalid act, merely because the compensation had not been previously fixed; and that the amount of such claim cannot upon that ground be recovered by respondents. Directors "are required to exercise reasonable care and sound business judgment, but nothing further than this. . . . . They must exercise the same diligence and care that men of usual prudence and skill

would exercise in the management of a similar business for themselves'': Cook, Stock, Stockh. & Corp. Law, sec. 703.

The contention of respondents that the act of the board on November 9th was invalid because the presence of Fairchild was necessary to make a quorum is not maintainable. There is a broad statement of this proposition of respondents in section 3929 of Thompson on Corporations, but the authorities there cited do not sustain the text. The main case cited is Miner v. Ice Co., 93 Mich. 97, 17 L. R. A. 412, 53 N. W. 218, but all that was decided in that case was that ''it is essential that the majority of the quorum of a board of directors shall be disinterested in respect to the matter voted on''; citing 1 Beach, Corp., sec. 276; Smith v. Association, 78 Cal. 289, 12 Am. St. Rep. 53, 20 Pac. 677. In the latter case (78 Cal., 20 Pac.), Garey and Crow, who were directors, were interested in the matter voted on, and they, with two others, made the necessary quorum of four at which the resolution in question was passed; and the court said: ''It was essential to its adoption that a majority of the quorum should vote for it (Civ. Code, sec. 308); and, clearly, there could not have been such a majority unless the vote of either Garey or Crow was counted in the affirmative.'' From this language, as well as from what is subsequently said in the opinion, it is clear that, if either Garey or Crow had been disinterested, the court would have upheld the resolution. In 1 Beach on Corporations, section 276, it is said: ''Generally a majority constitutes a quorum, and a majority of the quorum may validly act,'' and ''in the case of directors, who occupy a fiduciary relation to the company, it is essential that the majority of the quorum shall be disinterested in respect of the matters voted upon'': See, also, Buell v. Buckingham, 16 Iowa, 284, 85 Am. Dec. 516, and cases there cited; Foster v. Planing-Mill Co., 92 Mo. 79, 4 S. W. 260. Our Civil Code (section 308) provides, without any qualification, that ''a majority of the directors is a sufficient number to form a board for the transaction of business, and every decision of a majority of the directors forming such board, made when duly assembled, is valid as a corporate act.'' We think, therefore, that as a quorum was present when the resolutions of November 9th were passed, and as they were passed by a majority of the quorum who were disinterested in the matter voted on, the adoption of the resolutions was a valid cor-

porate act. Moreover, there is no sound objection to the validity of the ratification by the stockholders on January 10, 1893, of the above-mentioned acts of the board of directors. The ratification was done by the holders of a majority of the stock, independent of the stock represented and voted by Fairchild. Under the authorities, there can be no sound contention that the acts of the appellants in question were ultra vires, and therefore void and entirely beyond the reach of ratification. The stockholders could have provided beforehand for the compensation here in controversy, and the majority of stockholders can ratify "acts performed without their authority, if they might have authorized the performance of the acts in question in advance": 2 Mor. Corp., sec. 626. And it is clearly the law that acts intra vires can be ratified by a majority of the stockholders, and that their discretion in the premises cannot be questioned by single stockholders: Cook, Stock, Stockh. & Corp. Law, sec. 684, and cases there cited; Wickersham v. Crittenden, 110 Cal. 332, 42 Pac. 893. "The rule of stockholders' meetings is that the majority governs, and every stockholder contracts that such should be the rule": San Diego, O. T. & P. B. R. Co. v. Pacific Beach Co., 112 Cal. 53, 33 L. R. A. 788, 44 Pac. 333. Neither does it matter that the ratifying resolution was a general one, covering all the acts of the directors; for the record shows that express objection was made to its adoption on the ground that it included the compensation paid to Fairchild, and therefore there can be no pretense that the stockholders were ignorant of what they were doing: Underhill v. Improvement Co., 93 Cal. 300, 312, 313, 28 Pac. 1049.

For the foregoing reasons, the judgment and order appealed from must be reversed. Of course, the action of a board of directors in allowing compensation to one of its members should be closely scrutinized, for by such action great injustice is sometimes done; but the asserted principle upon which this case was decided in the court below cannot be maintained, namely, that under no circumstances can an officer of a corporation who is a director be allowed compensation for services unless the compensation had been fixed beforehand, and that in such case there is neither power in the board of directors to make the allowance, nor in the stockholders to ratify. In the case at bar it is quite apparent that the services of Fairchild were not merely formal and preten-

tious. They included the different kinds of work ordinarily expected of the manager of a large business, and it is almost common knowledge that such services are not rendered gratuitously, and that they generally command large compensation.

It is contended by appellants that after the case had been submitted the court made an order allowing an amendment to the complaint, in which there was set up, for the first time, a claim of about $300 for money paid out for an entertainment given to the board of supervisors of San Francisco at one of the mines (which appellants contend was legitimately expended in furtherance of the sale of bituminous rock, and resulted in benefit to the corporation); that in the amendment there was also first set up a claim for $2,000, which was alleged to be reasonable, for counsel fees; that the court also made an order that these new averments ''are deemed to have been by defendants denied''; and that these orders were erroneously made. The record, however, does not clearly show that these things occurred as claimed by appellants. Of course, appellants were entitled to contest these new items of the entertainment and the counsel fees, but it does not clearly appear that they were not allowed to do so; and, as a new trial is to be ordered, it is not necessary now to consider these matters. In case judgment, after another trial, shall be rendered merely for the $1,888.05 paid out in the litigation hereinbefore referred to, or for that and also the small amount paid for the entertainment, the court would hardly allow $2,000 for counsel fees; for the latter sum would absorb nearly the entire judgment, leaving nothing for the plaintiffs or for the receiver—a person who, in this class of cases, is generally provided for with inconsiderate liberality. The judgment and order denying a new trial are reversed.

We concur: Henshaw, J.; Temple, J.