# OREGON SHORT LINE R. CO. v. DISTRICT COURT OF THIRD JUDICIAL DISTRICT.*

## No. 1713.   Decided April 23, 1906 (85 Pac. 360).

1. CERTIORARI—GROUNDS FOR REVIEW—EXCESS OF JURISDICTION—EXISTENCE OF OTHER REMEDY.—Constitution, art. 8, sec. 4, confers on the Supreme Court original jurisdiction to issue writs of certiorari, and Revised Statutes 1898, sec. 3630, provides that a writ of review may be granted by the Supreme Court when an inferior tribunal exercising judicial functions is exceeding its jurisdiction and there is no appeal, nor any plain, speedy, and adequate remedy. *Held*, that where a judgment has been rendered in a district court in favor of plaintiff in an action instituted before a justice of the peace and taken to the district court by appeal, and it is shown that the district court has exceeded its jurisdiction, the Supreme Court has power by certiorari to review such jurisdictional question; the judgment not being reviewable by further appeal.[1]

2. JUSTICES OF THE PEACE—JURISDICTION—FREEHOLD.—Sess. Laws 1903, p. 69, c. 83, provides that every steam railroad shall erect and maintain a fence on each side of its railroad where the same "passes through lands owned and improved by private owners," and connect the same at all public road crossings with cattle guards, and that for failure so to do the corporation shall be liable for all damages sustained by the owner of any domestic animal killed or injured by such railroad in consequence thereof. *Held*, that, where a complaint before a justice of the peace against a railroad for killing plaintiff's horse at a point where the road was not fenced alleged that the railroad "passed through lands owned and improved by private owners," the denial of such allegation did not raise a material issue of freehold, ousting the justice of jurisdiction, as provided by Revised Statutes 1898, sec. 3674.

APPLICATION by the Oregon Short Line Railroad Company for writ of certiorari to review a judgment rendered by the district court of the Third judicial district, in an action brought by one O. O. Carty against petitioner.

APPLICATION DENIED.

---

1 Salt Lake City, etc., Co. v. Salt Lake City, 24 Utah 282, 67 Pac. 791; Gilbert v. Board, 11 Utah 378, 40 Pac. 264.

*Certiorari in exercise of superintending control over inferior courts, see note, 51 L. R. A. 33.

*P. L. Williams, G. H. Smith* and *Jno. G. Willis* for plaintiff.

*Goodwin & Van Pelt* for defendant.

STRAUP, J.

1. An application is made to this court for a writ of certiorari to review a judgment and proceedings of the district court. The petitioner, the Oregon Short Line Railroad Company, in behalf of said application, alleges that O. O. Carty, as plaintiff, filed an unverified complaint, against the petitioner in the justice's court, wherein it was alleged, so far as material here, that petitioner's steam railroad operated by it at Hot Springs, in Salt Lake county, "passed through lands owned and improved by private owners, and for a distance of more than twenty rods south of said Hot Springs; that about four rods south of said Hot Springs there was a public crossing and line of travel running east and west across the right of way and tracks" of petitioner; that its track at said place was not fenced, nor were there any cattle guards connecting the lands on each side of the track; that, by reason of petitioner's neglect to maintain fences and cattle guards, Carty's horse, of the value of $100, casually strayed and entered upon petitioner's right of way and was run over and killed by a locomotive operated by petitioner, in consequence of which judgment was demanded against petitioner for the sum of $100, the value of the horse. To this complaint the petitioner filed an unverified answer, admitting its ownership and operation of the railroad, but otherwise denied "each and every allegation" of the complaint, and pleaded contributory negligence. The case was tried before the justice, and judgment was rendered against petitioner for the value of the horse. From this judgment it appealed to the district court, where the case was tried *de novo* and a judgment there rendered against petitioner. Petitioner further alleged that upon the issues presented by the pleadings the justice and the district court exceeded their jurisdiction in rendering and entering judgment. In no

other particular is it alleged that either of said courts exceeded jurisdiction.    To this petition the defendant above named, the district court, demurred and made a motion to quash the writ.

2.    The determination of the matters presented involves the following questions:    First, where a case had been commenced in the justice's court and appealed to the district court, and there a final judgment rendered, may the proceedings in the district court be reviewed by the Supreme Court on a writ of certiorari, if sufficient facts are made to appear on the application that the district court exceeded its jurisdiction? and, second, if so, does the petition here show sufficient facts whereby it is made to appear that the district court exceeded its jurisdiction?

It is urged by the defendant that in view of what was said in the cases of *Crooks v. District Court,* 21 Utah 98, 59 Pac. 529, and *Smith v. District Court,* 24 Utah 164, 66 Pac. 1065, we are without power or authority to review such a judgment or proceedings of the district court, even though it may have exceeded its jurisdiction.    When these opinions are read and considered, it will be found that the controlling feature in the mind of the court was that a writ of certiorari could not be made to merely perform the function of an ordinary appeal.    That is to say, the Constitution of Utah not giving any right of appeal to the Supreme Court from a judgment of the district court in a case commenced in the justice's court and the Constitution making such a judgment of the district court final as to the right of an appeal, unless the validity or constitutionality of a statute is involved, a party may not use the writ of certiorari to have reviewed mere errors or mistakes made by the district court in proceedings and determinations within its jurisdiction.    But nowhere in the opinion of the court in either of the above cases was it indicated that where it is made to appear that the district court has exceeded its jurisdiction in a judicial proceeding from which no appeal lies, and when there is no plain, speedy, and adequate remedy, this court is powerless to inquire into and review determinations made without jurisdic-

tion or in excess of the jurisdiction conferred. In order to review such excess of jurisdiction, it matters not whether such action is made to appear in a proceeding originally commenced in the district court or appealed to it from a justice's court, but whether, in a proceeding before it, the district court, in the exercise of judicial functions, exceeded its jurisdiction, and that there is no appeal, nor any plain, speedy, and adequate remedy. We therefore adhere to the doctrine announced in the Crooks and Smith Cases, that this court will not permit a writ of certiorari to be used to exercise the functions of an ordinanry appeal and to review errors and mistakes where the court acted within its jurisdiction. Under the statute the office of a writ of certiorari is to inquire into and to review determinations made without jurisdiction or in excess of the jurisdiction conferred. We have the undoubted right by writ of certiorari to inquire into and to review such determinations.

Section 4, art. 8, Const. Utah, among other things, provides:

"The Supreme Court shall have original jurisdiction to issue writs of mandamus, certiorari, prohibition, *quo warranto* and *habeas corpus.*"

Section 3630, Revised Statutes 1898, provided:

"A writ of review may be granted by the Supreme Court, or by a district court, or a judge thereof, when an inferior tribunal, board or officer exercising judicial functions has exceeded the jurisdiction of such tribunal, board or officer and there is no appeal nor, in the judgment of the court or judge, any plain, speedy and adequate remedy."

When, therefore, it is made to appear, as is required by subsequent provisions of the statute, that the district court has exceeded its jurisdiction, and that there is no appeal nor plain, speedy, and adequate remedy, we have the right and power to issue a writ of certiorari to inquire into and review determinations made by it without or in excess of its jurisdiction. (*Salt Lake City, etc., Co. v. Salt Lake City,* 24 Utah 282, 67 Pac. 791; *Gilbert v. Board,* 11 Utah 378, 40 Pac. 264 Spelling, Ext. Relief, section 1921; 6 Cyc.,

750, 759; Harris, Certiorari, section 78; 4 Enc. Pl. & Pr., 90, 95, 98.)

3. This brings us to the next question: Are sufficient facts made to appear showing that the district court acted in excess of its jurisdiction? Section 3674, Revised Statutes 1898, so far as material here, provides:

> "The parties to an action in a justice's court, cannot give evidence upon any questions which involve the title or possession of real property, etc., nor can any issue presenting such question be tried by such court; and if it appear from the answer of the defendant, verified by his oath, or that of his agent or attorney, that the determination of the action will necessarily involve the question of title or possession to real property, etc., the justice must suspend all further proceedings in the action and certify the pleadings, and if any of the pleadings are oral, a transcript of the same, from his docket to the clerk of the district court of the county in which said justice's precinct is situated; and from the time of filing such pleadings or transcript with the clerk, the district court has over the action the same jurisdiction as if it had been commenced therein."

Chapter 83, p. 69, Sess. Laws 1903, so far as material here, provides:

> "Every railroad company operating a railroad by steam power within this state is hereby required to erect, within six months after the approval of this act, and thereafter maintain a fence on each side of its railroad where the same passes through lands owned and improved by private owners and connect the same at all public road crossings with cattle guards."

Provision is then made as to the kind of fence that shall be maintained, and then it is provided:

> "And any such corporation shall be liable for all damages sustained by the owner of any domestic animal killed or injured by such railroad in consequence of the failure to build or maintain such fence."

It is now claimed by the petitioner, because it was alleged in the complaint in the justice's court that petitioner's railroad "passed through lands owned and improved by private owners." and because of its general denial, the face of the pleadings showed that title to real estate was necessarily in-

volved, and that the justice had no jurisdiction to try the case, and therefore no jurisdiction was conferred upon the district court by the appeal. We are of the opinion, and so hold, that sufficient facts are not made to appear that title or possession of real estate was necessarily involved within the meaning of the statute. The allegation in the complaint, which was in the language of the statute, "passed through lands owned and improved by private owners," was merely descriptive of the general character of the lands through which the railroad passed and along which the petitioner was required to fence. By such an allegation the title or right of possession of the lands was not necessarily involved. It was wholly immaterial whether the adjoining land was owned by Carty, or the petitioner, or any other particular person. Plaintiff might have averred that the railroad passed through lands owned and improved by one or several persons, and, if the proof showed it was owned by another or different persons, it would not have been a fatal variance. The subject-matter of the litigation was an inquiry to personal property, of which the justice clearly had jurisdiction. If it could be said that title or possession of real estate was at all involved, it was drawn in question only incidentally or collaterally. The judgment did not in any sense adjudicate, directly or indirectly, title or right of possession to the land. The only judgment that could be rendered for plaintiff, and that was rendered in the case, was for the value of the horse destroyed, and the rendition thereof did not necessitate defining or determining or passing on the extent of title or right of possession to real estate within the meaning of the statute prohibiting the justice from entertaining jurisdiction.

"The suit here is only for the recovery of the statutory fine or penalty, and, at most, involves only incidentally a freehold. The justice of the peace could render no judgment that either party was possessed of a freehold estate, for the reason that his jurisdiction does not extend that far, it being limited to the recovery of the fine or penalty imposed by the statute." (*Herman v. Com'rs Highways*, 197 Ill. 94, 64 N. E. 337.)

"It is obvious that the title of land may incidentally come in question in various forms of action, as, for instance, in assault and battery, where

the defendant justifies the assault in defense of his freehold. I apprehend that in such case the jurisdiction of the justice would not be arrested, but that he should proceed to hear and determine the title, so far as it affected the rights of the parties in the suit, in the same manner that the matter would be heard and determined in the superior court." (*Haven v. Needham*, 20 Vt. 183.)

When the plaintiff is put "to the necessity of proving his declaration, he is bound to either prove, or disprove a title to the land, then the justice has no jurisdiction to try the case. But when the declaration is such as not to require the proof of title to land to sustain it, and such question only comes into the case by reason of some special line of defense, then the justice was not ousted of his jurisdiction to try the action. There is hardly any form of action in which the title or ownership of land may not incidentally arise, and it would be productive of infinite confusion and mischief to hold that in all actions whenever that is the case the jurisdiction ceases, and the parties are remitted to a new litigation in another forum." (*Jakeway v. Barrett*, 38 Vt. 316.)

"The averment in the declaration in question that the trees were standing 'on the land of the said plaintiff'" was not an averment of claim of title. (*Reynolds v. Maynard* [Mich.], 100 N. W. 174.)

Our attention has been called to *Boyd v. Southern Cal. Ry. Co.*, 126 Cal. 573, 58 Pac. 1046, and *Baker v. Southern Cal. Ry. Co.*, 110 Cal. 455, 42 Pac. 975, holding that title to realty was involved. The California statute and the Utah statute are susceptible of different constructions. The former statute provides that if railroad corporations fail to fence and their engines or cars shall kill or maim cattle, etc., "upon their line of road which passes through or along the property of the owner thereof they must pay to the owner of such cattle," etc. It was held by the California courts that the statute was designed to protect the adjoining landowners. In the Boyd Case it was further said: "In this count of the complaint plaintiff avers title in himself to a described tract of land. . . . When plaintiff based his right on that statute averring ownership of land, as he did and was required to do, title to the land was necessarily involved," etc. In the Baker Case:

"It will be noticed that by this section it is contemplated that the plaintiff must be the owner of the land through which the line of road passes, and an allegation of ownership was made in the complaint in the present case."

It will therefore be observed that under the California statute, as construed by the courts of that state, it is essential that the plaintiff be the owner of land to entitle him to recover, and an allegation of such ownership is required in his complaint to state a cause of action. The Utah statute is not susceptible of such a construction. It gives a right of action to the owner of any domestic animal killed, whether he be the owner of the adjoining land or not, and hence to state a cause of action a plaintiff under the Utah statute is not required to allege that he is is the owner of land. Furthermore, the consideration in the California cases involved the right of an appeal from the superior court to the Supreme Court under the constitutional provision, "in all cases at law which involve the title or possession of real estate," and it was held that the Supreme Court had appellate jurisdiction in such cases if "title or possession is only incidentally involved." (*Hart v. Carnall-Hopkins Co.*, 103 Cal. 132, 37 Pac. 196.) The Utah statute in question forbids the justice from entertaining jurisdiction when title or possession to real estate is necessarily involved.

Our conclusion is that no sufficient facts are made to appear that title or possession of real estate was necessarily involved, and the demurrer is therefore sustained.

Having reached this conclusion, it is not necessary to decide whether the petitioner is in position to raise the question because of its answer in the justice's court not being verified, or as to a waiver on its part because of its failure to object to the justice proceeding to try the case on the merits, and because of no request being made that the case be certified to the district court, or because of its failure to object to the district court's trying the case de novo.

The petitioner having indicated that if the demurrer be sustained it cared not to further plead, therefore the order of this court is that the application be denied, the proceeding dismissed, and the orders and stay heretofore granted by us dissolved.

BARTCH, C. J., concurs in the result. McCARTY, J., concurs.