## MANNING et al. v. DAY.

No. 3467.   Decided June 17, 1920.   (190 Pac. 779.)

1. VENDOR AND PURCHASER—CONTRACT HELD A SALE AND NOT AN OPTION. Facts *held* to show that plaintiffs made a sale of their equity of redemption to defendant, and did not merely give defendant an option to purchase it.

2. VENDOR AND PURCHASER—CONDITION ON WHICH PRICE BECAME PAYABLE HELD PERFORMED. Where defendant agreed to pay the purchase price for plaintiff's equity of redemption upon consummating sale thereof to a third party, *held*, that the sale to the third party was consummated, so as to make the price payable, when, after the period of redemption had expired, deed to the property to such third party was executed by the mortgagee, to whom a sheriff's deed had been executed, and the consideration therefor was received by defendant exactly as if he himself had executed the deed.

3. COURTS—ACTION FOR PRICE HELD NOT TO INVOLVE "TITLE OR POSSESSION OF REAL PROPERTY" OUSTING CITY COURT OF JURISDICTION. In action for purchase price of real property, defendant's denial that he purchased plaintiffs' interest did not involve either the "title or possession of real property" in the sense in which these words are used in Comp. Laws 1917, Section 1711, as to city courts' jurisdiction.[1]

Appeal from District Court, Third District, Salt Lake County; *Wilson McCarthy*, Judge.

Action by J. C. Manning and others against W. P. Day. From judgment for plaintiffs, defendant appeals.

AFFIRMED.

*Soule & Spalding*, of Salt Lake City, for appellant.

*D. H. Wenger* and *J. E. Darmer*, both of Salt Lake City, for respondents.

---

[1] *O. S. L. R. Co.* v. *District Court*, 30 Utah, 371, 85 Pac. 360.

THURMAN, J.

Plaintiffs' complaint in substance alleges that on the —————— day of May, 1918, plaintiffs and defendant entered into an agreement whereby plaintiffs sold and conveyed to defendant all their interest in certain real estate in Davis county for the sum of $250, to be paid whenever a sale of said property was consummated with one Orson F. Walton; that said sale to Walton was consummated on or about the 26th day of July, 1918, and said sum of $250 thereupon became due and payable; that defendant refuses to pay the same.

Defendant denies the complaint except as specifically admitted, and affirmatively alleges that at the time alleged in the complaint plaintiffs were the owners of a one-half interest in the property mentioned, but that at said time the property was subject to a first mortgage in favor of Zion's Savings Bank & Trust Company (hereinafter called the bank) ; that said mortgage had been foreclosed and the property sold at sheriff's sale to said bank; that on or about the 1st day of May, 1918, defendant procured an option from plaintiffs for their interest in said property for the sum of $250; that thereafter, on or about the 26th day of July, 1918, within the period covered by said option, a sheriff's deed to said property was issued to said bank, and that plaintiffs had no interest in said property of any kind or nature whatever; that thereafter said bank sold and conveyed said property to Walton for a valuable consideration.

The issues presented by the pleadings involve two questions only:  (1) Was the transaction between plaintiffs and defendant a sale or an option?  (2) Did the defendant consummate a sale of the property, or was the sale of the property by the bank to Walton an independent transaction unconnected with the deal between defendant and Walton?

The court found the issues in favor of plaintiffs, and judgment for the amount sued for was entered.  Defendant appeals.

It appears from the evidence that at the time of the trans-

action between plaintiffs and defendant the defendant was the owner and holder of a second mortgage on the premises in question for the sum of $1,525; that in order to protect his said mortgage and procure satisfaction of the indebtedness secured thereby he entered into negotiations with Walton for the sale of said property or the exchange thereof for money and certain real estate belonging to Walton in Salt Lake City. In pursuance of this purpose at the time mentioned in plaintiffs' complaint defendant and Walton called upon plaintiffs at Kaysville, Utah, and then and there in the presence of Walton plaintiffs and defendant entered into the transaction referred to in plaintiffs' complaint. A few days afterwards defendant and Walton entered into a formal agreement in writing to the effect that defendant would assign to Walton his said mortgage for the sum of $1,525, and also convey to him the Davis county property subject to a mortgage of $2,000 to be placed thereon. In consideration of these undertakings on the part of defendant, Walton was to pay defendant the sum of $1,000 and convey to him the said real estate in Salt Lake City. It was further agreed between them that each of said parties would place in escrow with O. P. Soule, as depositary, the following documents involved in said agreement: The defendant was to deposit his mortgage and note for $1,525 and his contract with the plaintiffs for the purchase of their interest in the Davis county property, and Walton was to deposit his check for $1,000, payable to defendant, and also a warranty deed to defendant for the Salt Lake property. It was also provided in said agreement that, if on or before the 10th day of August, 1918, defendant should deliver to Walton a good and sufficient warranty deed to the Davis county property with an abstract showing a clear and unincumbered title, subject only to a $2,000 mortgage as heretofore stated, then the said Soule should deliver to Walton the deed to the Davis county property and deliver to defendant the deed to the Salt Lake property and the check of Walton for $1,000. It was further provided that, if for any reason defendant was unable to convey title to Walton for the Davis county prop-

erty on or before the said 10th day of August, 1918, said Soule should return to Walton his deed to defendant for the Salt Lake property, and his said check for $1,000, and should likewise return to defendant the documents deposited by him. The documents were deposited as provided in the agreement. In the meantime Walton had already entered into possession of the Davis county property.

It is contended by defendant, and there is some evidence to that effect, that the transaction between him and plaintiffs was only an option given to him by them to purchase the property within a certain time; that plaintiffs only owned an equity of redemption in one-half of the property desired by Walton, and that one Leaker owned a similar equity in the other half; that it was understood between him and plaintiffs that, if he could purchase Leaker's interests, he would also purchase theirs; that for that reason the transaction was put in the form of an option; that he was unable to purchase Leaker's interest, except at an exorbitant price which he refused to pay; that thereafter the agreement between him and Walton failed; that he then withdrew the papers he had deposited in escrow. After that defendant saw Walton and told him they could close the deal on precisely the same basis as that provided for in their agreement, but that Walton would have to take the deed from the bank instead of from defendant himself.

It appears from the evidence that the period of redemption expired July 24, 1918, and a deed from the sheriff to the bank and from the bank to Walton were executed on July 26th, two days after the period of redemption expired. At the request of Walton Soule delivered to defendant the check for $1,000 which Walton had deposited with him, and also the deed for the Salt Lake property. The entire transaction, in substance, was carried out just as had been agreed to between Walton and defendant. The only difference was that the deed to Walton was made by the bank instead of the defendant. The consideration received by both the defendant and Walton was exactly the same as provided in the escrow agreement.

Walton testified that the terms of the agreement between him and defendant were complied with; that defendant and Soule were at the bank on the 26th of July when the deed was turned over to Walton, and the conditions of the deal were in accordance with the agreement between him and defendant.

The written agreement between plaintiffs and defendant was either lost or destroyed by defendant when he withdrew the papers from escrow, but the evidence as to its contents tended strongly to establish the fact that the transaction was a sale, and not an option. The evidence also in a most satisfactory manner establishes the fact that the sale of the Davis county property to Walton was consummated substantially in accordance with the very plan defendant had in mind when he entered into the agreement with plaintiffs by which he procured their equity of redemption. Plaintiffs parted with their equity in good faith, believing that the consideration would be paid when the property was conveyed to Walton. Immediately after the period of redemption had expired and plaintiffs' power to redeem was lost, the sale was consummated, but by a different method. The deed was executed by the bank instead of the defendant. Defendant then repudiated his agreement with plaintiffs and refused to pay the consideration on the flimsy pretext that he had not consummated a sale to Walton.

What we have said, in effect, disposes of all the assignments except one which we will briefly consider. This case was originally commenced in the city court of Salt Lake City. In that court a judgment of nonsuit was entered, and plaintiffs appealed to the district court. In the district court defendant raised the question of jurisdiction on the grounds that the action involved the title or possession of real property. In support of his contention defendant invokes Comp. Laws 1917, section 1711, which in part reads:

"The parties to an action in a city court cannot give evidence upon any questions which involve the title or possession of real property."

In the case at bar neither the title nor possession of real

estate is involved. The defendant's denial that he purchased plaintiffs' interest does not involve either the title or possession of real property in the sense in which these words are used in the statute.                                                3

Without further comment we are of the opinion that the question here presented is controlled by the case of *O. S. L. R. Co.* v. *District Court,* 30 Utah, 371, 85 Pac. 360, cited by respondent. Appellant relies on numerous cases cited in his brief, none of which, in the opinion of the court, are sufficiently pertinent to justify special reference.

The judgment of the district court is affirmed at appellant's costs.

CORFMAN, C. J., and FRICK, WEBER and GIDEON, JJ., concur.