No. 14,830.

## THE BOARD OF COMMISSIONERS OF PULASKI COUNTY *v.* SHIELDS.

COUNTY COMMISSIONERS.—*Power to Employ Superintendent of County Asylum.*
—A contract by a board of county commissioners employing a person as
superintendent of a county asylum for a period of five years is valid
and not contrary to public policy; but such a contract does not prohibit
the board discontinuing the asylum.

SAME.—*Is a Continuous Corporation.*—*Contracts.*—The board of commission-
ers of a county is a corporation, a continuous body; and while the *per-
sonnel* of its membership changes, the corporation continues unchanged.
Its contracts are the contracts of the board, and not of its members.

SAME.—*Reports of Superintendent of County Asylum, Waiver of.*—The board
of county commissioners have power to waive their right to demand of
the superintendent of the county asylum the report required by statute;
and when they have waived the right to demand such a report they can
not insist, in an action on his contract of employment with them, brought
by him, that he in that respect has not fulfilled his contract.

SAME.—*Superintendent of County Asylum Engaging in other Business.*—If the
superintendent of a county asylum engages temporarily in other busi-
ness, with the consent of the board of county commissioners, but super-
vises and controls the management of the asylum under the direction
of the board, and causes the work to be done at his own expense, and no
one is damaged thereby, such loss of time on his part is not such a
breach of his contract as justifies the board in rescinding the contract
and discharging him from their employment.

From the Cass Circuit Court.

*J. C. Nye, S. T. McConnell, D. B. McConnell* and *A. G.
Jenkins,* for appellant.

*D. C. Justice, N. L. Agnew* and *B. Borders,* for appellee.

McBRIDE, J.—The Board of Commissioners of Pulaski
county by written contract employed the appellee to superin-
tend the county asylum and poor farm of that county for a
term of five years from April 1, 1884.

The complaint alleges: "That the plaintiff on said first
day of April, 1884, entered upon the discharge of his duties
as such superintendent, and continued in discharge of his
duties under said contract, and faithfully performed all the

conditions upon his part until the 22d day of March, 1887, at which time the said county, acting by its Board of Commissioners, to wit: George H. Barnett, Clark R. Parcel and Charles Becker, without any cause and without right, excluded and dismissed the plaintiff from his said employment as such superintendent of said county asylum and poor farm, and have at all times since, without any cause or excuse, excluded and prevented the said plaintiff from said employment and the discharge of his duties thereof. * * * * That he has at all times been ready, willing and able to perform his part of said contract," etc.

The principal controversy in the case is as to the validity of the contract, the appellant insisting that it is "void." They base this contention upon the ground that the board of county commissioners has no power to make a contract employing a superintendent of the county asylum and poor farm for a term of five years; that such a contract is against public policy; that to uphold it would "put it in the power of one board of commissioners to completely tie the hands of its successors;" and that such a contract would operate as an abridgment of the "administrative, executive and legislative" power of the board to an extent which the law will not tolerate.

These questions are raised by the action of the circuit court in overruling a demurrer by the appellant to the complaint on the ground that it did not state facts sufficient to constitute a cause of action.

This court has had frequent occasion to consider the nature and extent of the powers possessed by boards of county commissioners.

Many of the cases are reviewed in the case of *Platter* v. *Board, etc.,* 103 Ind. 360.

The court says, 369 : "The law commits to the board of commissioners very extensive powers over the property, finances and institutions of the county." * * * It has " very broad powers over county property and institutions,

and its discretion in the control and disposition of such in-stitutions is seldom if ever interfered with by the courts. * * * There are numerous decisions in our own reports declaring that the board of commissioners constitutes a cor-poration, and that its rights, duties and liabilities are sub-stantially the same as those of a municipal corporation."

In *State, ex rel.,* v. *Clark,* 4 Ind. 315, it was said : " In legal contemplation, the board of commissioners is the county."

That boards of county commissioners, in common with municipal corporations and other corporations of like char-acter, may make valid contracts for the employment of agents to aid in the administration of the affairs of such cor-poration, is beyond controversy. As is said by the court in *City of Indianapolis* v. *Gas, etc., Co.,* 66 Ind. 396, "A mu-nicipal corporation, not having either body, limbs, feet or hands, but being merely a legal entity, can not execute its own acts, nor administer its own affairs. To do this it must employ persons, other corporations, or agencies of some kind, and to employ them and agree to pay them is to make a contract ; and if it could not make such contracts, and was not bound thereby, it could not carry on the purposes or attain the objects for which it was established."

See, also, *City of Logansport* v. *Dykeman,* 116 Ind. 15 ; *City of Valparaiso* v. *Gardner,* 97 Ind. 1; *Duncan* v. *Board, etc.,* 101 Ind. 403 ; *Crow* v. *Board, etc.,* 118 Ind. 51 ; *City of Vincennes* v. *Callender,* 86 Ind. 484. In *City of Indianapolis* v. *Gas, etc., Co., supra,* the power of a city to make a valid contract for gas to light its streets and public buildings for the period of twenty years is affirmed, and in *City of Valparaiso* v. *Gardner, supra,* the court holds that a city may make a valid contract for a supply of water for a period of twenty years. See, also, *Crowder* v. *Town of Sullivan,* 128 Ind. 486.

Being charged by law with the performance of certain du-ties, even if no express authority was conferred to contract with and employ the necessary agencies to compass those ends, such power would be inferred.

Boards of county commissioners are not only authorized to provide an asylum for the poor of such county, but are by statute expressly authorized to employ a superintendent of such asylum.

Section 6090, R. S. 1881, provides as follows: " It shall be lawful for the board of county commissioners of any county of this State, whenever it may deem it advisable, to purchase a tract of land in the name of such county, and thereon to build, establish, and organize an asylum for the poor, and to employ some humane and responsible person, resident in such county, to take charge of the same, upon such terms and under such restrictions as the board shall consider most advantageous for the interests of the county, who shall be called the 'superintendent of the county asylum.' " This certainly confers a very wide range of discretion upon such boards.

To employ a superintendent to do certain things on certain "terms" is to contract with him.

The power thus conferred upon boards of county commissioners to employ and contract with a superintendent, in the absence of any restriction contained in the statute, of necessity carries with it the power to fix some term of service or time of duration of such employment. It was undoubtedly competent for the Legislature to place any restrictions they might see fit on the board in the employment of a superintendent, and provide that no contract of employment should be for longer than a given time, or even to forbid making a contract of employment for any certain and definite term. They have, however, not seen fit to do so. It must not be understood that there are no bounds to the discretion thus granted. We do not wish to be understood as holding that their action in the making of such contracts is not subject to review, and that a contract would not be annulled if it was shown that the board had abused its discretion in making it, but we do hold that unless it appears that there

has been a clear abuse of discretion, and no fraud is shown, the courts will not interfere.

It is insisted, however, that this contract is void upon other grounds,—that it is in contravention of public policy, for the reason that to uphold it would put it in the power of one board of commissioners to bind the hands of its successors, and that it operates as an unwarranted abridgment of the "administrative, executive and legislative" powers of the board.

The first of the reasons assigned rests upon an erroneous conception of the constitution of the board of county commissioners—that that body consists of a series or succession of boards, one following the other. As we have heretofore said, the board of commissioners is a corporation, representing the county. From a legal stand-point it *is* the county, as is said in *State, ex rel.,* v. *Clark, supra.*

It is a continuous body. While the *personnel* of its membership changes, the corporation continues unchanged. It has power to contract. Its contracts are the contracts of the board, and not of its members. An essential characteristic of a valid contract is, that it is mutually binding upon the parties to it. A contract by a board of commissioners, the duration of which extends beyond the term of service of its then members, is not, therefore, invalid for that reason. As individuals they are not parties to it.

This is clearly shown by Zollars, J., speaking for the court in the case of *Reubelt* v. *School Town of Noblesville,* 106 Ind. 478, where it was contended that a contract by the school board, employing a superintendent of the schools of the town, was void as against public policy, because it was made in May, preceding the annual election, in June following, of a new school trustee, and the reorganization of that board; and the employment was for a year.

It is there said: "The reorganization of the board, as required by the above statute, is not, in legal contemplation, the creation of a new board, as distinguished from an old

board. The board of school trustees is a continuing body, just as a common council of a city is a continuing body. The members change with the expiration of terms and the election of new members; but, together, the members constitute the board of school trustees which represents the school corporation. * * * The question, therefore, is not as to the authority of one board to bind the corporation by a contract to be performed after that board shall have ceased to exist, and another shall have been organized, but whether the board of school trustees can bind the corporation by contracts which are not to be performed until after the time when a new member of the board is to be elected." The court held the contract valid. See, also, *Wait* v. *Ray*, 67 N. Y. 36.

Counsel for the appellant cite the case of *Board, etc.*, v. *Taylor*, 123 Ind. 148, as sustaining them in this controversy, and as decisive of the questions involved.

That was a case where a board of county commissioners had made a contract with a firm of attorneys to act as county attorneys for a period of three years from a certain date in the future—the date fixed being the day when one of its members would retire from the board and his successor would qualify. The attorneys thus contracted with never actually entered upon the employment, and never in fact rendered any services under it. The board of commissioners treated it as void, ignored it, and employed another attorney. The court held the contract void upon the ground that the board had no power to make the contract for that length of time. It is not necessary that we here express either approval or disapproval of that case, as applied to the facts then before the court. It is enough to say that one fact which no doubt had great weight in leading the court to the conclusion reached does not exist in this case. The contract there involved was for the employment of a county attorney or attorneys, who, by virtue of such employment, would be the attorney for the board.

The relations existing between an attorney and his client are unlike those ordinarily existing between employer and employee. They are of an intimate and confidential character. The attorney, instead of acting under the direction and instruction of his client, is himself largely the adviser and instructor. One of the principal duties imposed upon him by his employment is to advise as to the law. There is, therefore, much reason in holding that the board, as personally constituted, should be at all times free to select its own confidential legal adviser.

No such reasons exist in the case of the employment of a superintendent of the county asylum and poor farm. Nor can it be said that there is in such a contract as is involved in this case any unwarranted abridgment of any of the powers of the board.

The superintendent is not an officer, but is a mere employee of the board. The statute specifies certain of his duties, but it further provides (section 6091, R. S. 1881) that he shall " perform such other duties as the board of county commissioners shall, from time to time, establish, order, and direct, consistent with the laws of this State."

The statute which authorizes his employment enters into and forms a part of the contract made with him. The contract also expressly stipulates that he shall perform his duties " under the direction and supervision of the said board of commissioners," to keep accounts, and " whenever required render an account to the board of commissioners."

It is also contended that, while the board of commissioners may in their discretion change the location of a poor farm and county asylum, or may, under section 6098, R. S. 1881, discontinue it and dispose of the property, the effect of such a contract, if sustained, would be to deprive them of the power to do either for five years.

We are unable to see how any such result could possibly follow. If the contract sought in any way to bind the commissioners not to change the location of the poor farm for

five years, or to bind them not to discontinue it for that length of time, we think such attempted control of the future action of the board would be void, and if such invalid provisions were so connected with the remaining terms of the contract that they could not be eliminated and leave a valid contract remaining, the contract would also be void. The contract here involved, however, only binds the superintendent to superintend the poor farm of the county, without specifying its location. The contract, is of course, executed in view of the power of the board in the exercise of a sound discretion to discontinue the poor farm entirely, or to change its location. If its location is changed his duties will continue on the new farm.

As above said, the statute which authorizes his employment enters into and forms a part of the contract. Therefore, although the contract is in terms for five years, the law carries with it an implied condition, subjecting it to the express discretionary power given the board to discontinue the farm and asylum altogether.

There is nothing in the contract which purports to attempt to bind the board not to discontinue the farm at any time, if in its discretion, the best interests of the county require it, unless the mere fixing of the term of employment can be so construed.

We think the contract such as the board had the power to make, that it does not contravene public policy, that it is valid and binding, and that it can only be rescinded for cause, or by consent of both parties.

The complaint alleges that the appellant acted " without cause." The demurrer admits this. The court did not err in overruling the demurrer.

This brings us to the consideration of the questions raised by the motion for a new trial.

Thirty reasons are assigned for a new trial. Counsel, however, only question in argument the action of the court in

giving instructions numbered 7 and 9, and in refusing to admit certain testimony of two witnesses.

They also argue that the verdict is not sustained by sufficient evidence.

The defence was upon the ground that the appellee had violated the contract to such an extent that the appellant was authorized to and did rescind it. Among the specific violations of the contract charged was the failure of the appellee to make to the commissioners the reports required by the law, and that the appellee had, while acting as superintendent, been a candidate for sheriff, and, while pressing such candidacy, had neglected his duty as superintendent.

The court, in its sixth instruction, charged the jury that the appellee must not only prove the execution of the contract, but must show full performance by himself, or he could not recover.

The seventh instruction related to the reports which he was required to make to the board, and instructed the jury that if he had failed or neglected to make such reports he could not recover unless they should find from the evidence that the making of the reports had been waived by the appellant. They were further instructed as to what evidence they might consider in determining whether or not the board had waived the making of such reports. We see no error in this. The reports are required for the information of the board, and we see no reason why it has not the power to waive them. The propriety or expediency of such waiver is a matter we need not here consider. The members of the board are, however, required to exercise a personal supervision over the poor farm and asylum, and to make personal inspections. The reports are intended to furnish them additional information upon certain matters, and we think if they see fit to waive making them, and actually do so, they can not afterward rescind the contract upon that ground.

By the ninth instruction the court charged the jury that if they found from the evidence that during the year 1886

The Board of Commissioners of Pulaski County v. Shields.

the appellee was a candidate for sheriff, but that before he became a candidate the board in regular session, or a majority of its members, consented to such candidacy, and that while a candidate he still "kept supervision and control of the management and superintendency of the said poor farm and asylum under the supervision and direction of the board of commissioners, and that he caused the work to be done at his own expense, and the county, nor the asylum, nor the paupers, nor poor farm suffered damage thereby. Such loss of time on his part would not be such a breach of his contract as would justify the board of commissioners in rescinding the contract and discharging the plaintiff from his said employment." This instruction is not erroneous.

While George H. Barnett, one of the commissioners, was testifying as a witness the appellant sought to prove by him that when he visited the asylum for the purpose of inspection some of the paupers complained to him of their treatment. It was not claimed that the appellee was present or heard the complaints. The court rightfully excluded the testimony. It was competent to prove any fact showing neglect of duty or violation of the contract by the appellee, but such evidence as was here offered would be mere hearsay and would have no tendency to prove the fact of improper treatment.

The appellant also offered to prove by this witness and another how much wheat would in their opinion be required to properly "bread" the inmates of the asylum, including the family of the superintendent. The court did not err in excluding this testimony.

While the evidence is upon many points conflicting, there is much evidence tending to sustain the verdict in every material particular. The jury and the court below having weighed it and decided favorably to the appellee, we can not disturb the verdict upon the weight of the evidence.

Judgment affirmed.

Filed Dec.     1.