[Sac. No. 355.   Department Two.—December 23, 1898.]

MAURICE E. POWER, Respondent, v. E. A. MAY, Treasurer of Tulare County, Appellant.

COUNTY HOSPITAL FUND—COMMISSION ON MONEY COLLECTED FROM STATE— POWER OF SUPERVISORS.—The board of supervisors of a county have power to employ an attorney to present to the state board of examiners a claim of the county against the state on account of the care of indigent persons, orphans, and half orphans supported by the county; and to allow him commissions therefor to be paid out of the hospital fund.

ID.—INFORMAL EMPLOYMENT BY MAJORITY OF BOARD—RATIFICATION.— The action of the board of supervisors in employing an attorney to act for them, ought regularly to be entered upon the minutes of the board, as a formal resolution, but if the majority of its members authorized his employment informally, they having the power to contract, and the board in regular session approved and allowed his bill for services in accordance with the understanding, and ordered it paid, its subsequent action was a ratification of the employment, which should be treated as equivalent to a previous authority.

ID.—CONTRACT WITH CLERK OF BOARD—COLLUSION WITH DISTRICT ATTORNEY.—Where the board of supervisors had made a contract with its outgoing clerk to collect the hospital fund due from the state for a specified commission, if there was a collusive agreement between the clerk and the outgoing district attorney while they were in office, that the latter should perform the contract after the expiration of his term and divide the compensation with

the former, such collusive agreement would be a defense to any recovery of commissions for the services of such attorney, though his employment was sanctioned by a majority of the board, and the board had allowed his claim for services.

ID.—ABSENCE OF COLLUSION—CHANGE OF EMPLOYEE—MEASURE OF COMPENSATION.—If it appears that there was in fact no collusion or prior agreement between the clerk and the district attorney, while in office, and that a subsequent arrangement was made with the consent of both of them and of a majority of the board of supervisors, that the attorney should perform the work agreed to be performed by the ex-clerk for a like compensation, and without any right of the latter to share therein, the contract with him being merely referred to as determining the measure of compensation for the services of the attorney, the latter can enforce an allowance made for his services by the board.

ID.—STATUTORY CONSTRUCTION—APPROPRIATION FROM HOSPITAL FUND.— It seems that section 19 of the act of April 11, 1855, which required that the hospital fund should be appropriated for no other object than for the care of the indigent sick, was superseded by section 25 of the County Government Act, but the former section, if in force, does not apply to the fund which comes to the county from the state under section 22 of article IV of the constitution or preclude the allowance out of that fund of commissions for its collection.

ID.— MANDAMUS TO COUNTY TREASURER — COSTS.— Upon *mandamus* granted against the county treasurer to compel the payment out of the hospital fund collected from the state, of a warrant drawn upon the same for the commissions allowed by the supervisors for such collections, the costs of the *mandamus* proceeding are properly chargeable against the defendant personally.

APPEAL from a judgment of the Superior Court of Tulare County and from an order denying a new trial. Wheaton A. Gray, Judge.

The facts are stated in the opinion.

F. B. Howard, for Appellant.

Lamberson & Middlecoff, for Respondent.

CHIPMAN, C.—Action to compel defendant, as treasurer of Tulare county, to pay to plaintiff out of the hospital fund of said county five hundred and eighty-eight dollars and ninety-four cents, the amount of a warrant, for commissions on money collected by plaintiff from the state for the care of aged and indigent persons and orphans and half-orphans.

The court directed the writ of mandate to issue as prayed for, with costs. This appeal is from the judgment and from the order denying motion for a new trial.

Its appears from the findings that the board of supervisors made a contract in December, 1894, with one John Broder, while he was the qualified clerk of the board, to collect the money due from the state on account of indigents supported by the county; plaintiff knew nothing of this contract until in March, 1895, at which time Broder informed plaintiff that he, Broder, could not perform the service, as it required a lawyer, of which profession plaintiff was a member; plaintiff thereupon applied to the board for permission to perform these services on the terms stated in Broder's contract and for the compensation agreed to be paid him, and a majority of said board informed plaintiff that he might do the work on these terms; acting upon the statement of the majority of the board, plaintiff prepared and presented to the state board of examiners the claim of said county, which aggregated a sum in excess of four thousand dollars and was allowed for three thousand nine hundred and twenty-five dollars and twenty-five cents, and afterward paid to the county and placed to the credit of the hospital fund; plaintiff presented his claim for said services to the board of supervisors in due form, and on July 1, 1895, it was allowed and "ordered to be paid to the amount of five hundred and eighty-eight dollars and ninety-four cents out of the hospital fund of said county" (being fifteen per cent of the collection); the claim as presented contained the statement, "as per contract with John Broder, made by order of board of supervisors on the eighth day of December, 1894, five hundred and eighty-eight dollars and ninety-four cents," but these words "were inserted in said claim by plaintiff solely and entirely for the purpose of referring to said contract for the purpose of determining the rate of compensation which he was to receive for the collection of said money, . . . . and were not inserted therein for the purpose of claiming any commissions or compensation of any kind whatever under or by virtue of said contract or resolution of the board of supervisors of December 8, 1896"; Broder was not asked to and never did assign this contract to plaintiff, but plaintiff asked Broder to make a release of said order of employment

to avoid his making any claim, and that plaintiff never agreed to pay Broder any portion of the sum received by plaintiff for such services; the auditor of the county duly issued his warrant to plaintiff for the said amount, which plaintiff duly presented to the treasurer for payment, which was refused; at the time there was "sufficient money in the hospital fund of said county properly applicable to the payment thereof to pay the said sum of five hundred and eighty-eight dollars and ninety-four cents, after paying all other sums legally chargeable against said fund."

1. This case was here on a former appeal from a judgment on the pleadings, and is reported in *Power v. May*, 114 Cal. 207. It was then held, on the authority of *Lassen County v. Shinn*, 88 Cal. 510, in a similar case, that the board of supervisors had the power to make such a contract as is here in question. Appellant renews the objection to the legality of the claim, placing it upon the ground that the hospital fund "cannot be subjected to the payment of claims for ministerial services rendered upon contracts for the collection of debts due the county."

In *Lassen County v. Shinn, supra*, the contract provided for the payment of the commissions out of the fund collected. Whether this collected fund was placed to the credit of the hospital fund of the county before the commissions were paid does not appear. It does not appear that the money collected was paid to the county treasurer, and that the commissions were paid by a warrant drawn on that officer. It was the duty of the treasurer to place this money to the credit of the fund to which it belonged (the hospital fund), and to pay the warrant out of that fund, and the fact found is that he did so. We see no reason why he could not pay the warrant for the commissions out of the money collected as well after it was placed to the credit of the hospital fund as before it reached that fund; indeed, it would have been improper to have paid the commissions out of the money collected and then to have placed only the balance to the credit of the hospital fund. Appellant cites section 19 of the act of April 11, 1855 (Stats. 1855, p. 67), which, as to this hospital fund, provides that it is to "be used for the care and protection of the indigent sick, and shall be appropriated for no other object." Respondent claims that this act was repealed by section 25 of the County Government Act of 1893.

We think the provisions of section 19 of the act of 1855 are superseded by section 25 of the County Government Act. But, if this be not so, we do not think section 19 applies to the fund here in question which comes to the county by operation of section 22, article IV, of the constitution; the act of March 25, 1880 (Stats. 1880, p. 13), and the act of March 15, 1883 (Stats. 1883, p. 380); whereas the fund referred to in the act of 1855 is raised by taxation by the county.

Appellant claims that the powers of boards of supervisors to employ counsel have been greatly restricted by the decision in *Merriam v. Barnum,* 116 Cal. 619. In that case the former decisions were re-examined and distinguished; and, while it was there said that the language used in *Lassen County v. Shinn, supra,* is somewhat broader than the authorities cited in support of it would justify, the law as announced in that case was not doubted or overruled.

2. Appellant claims that the evidence does not sustain the findings. The answer alleges a collusive agreement between Broder, while he was clerk of the board, and plaintiff, who was then district attorney of the county, to obtain the Broder contract and divide the compensation. Broder and plaintiff both went out of office on the first Monday of January, 1895. This defense was held to be a good one in the former appeal, if proven. The question, then, is: Does the evidence sustain the finding that plaintiff claims under a different agreement, and one made when plaintiff was not in office? The finding is that the contract was made with plaintiff alone, and that Broder had no interest in it and was not promised any part of the compensation by plaintiff. The finding is also against any collusive understanding between them when the Broder contract was made, or at any time while they were in office. We think the evidence sufficient to sustain these findings. But if this be conceded, appellant contends that there was no lawful contract made with the board by plaintiff because no resolution was passed by the board authorizing plaintiff to perform the service. The evidence tends to show that plaintiff represented to the different members of the board that Broder could not perform his contract and was willing that plaintiff should do the work for the board, and plaintiff offered to do it upon the same terms as were

stipulated in the Broder contract. There was no resolution of authority passed by the board, but the members told plaintiff to go ahead and make the collection and he would be paid at the rate agreed upon with Broder. Plaintiff did the work, collected the money and turned it over to the county and presented his bill for services to the board. In the bill reference was made to the Broder contract, but the evidence tends to show, and the court found, that this reference was made to fix the amount of compensation, and not to show that he claimed under the Broder contract. We think the evidence justifies the view of the matter taken by the learned judge who tried the case.

It is true that there was no previous formal resolution of the board authorizing plaintiff to perform the service; there was an understanding to that effect, which for some unexplained reason was not entered upon the minutes of the board. While in all matters of such importance we think the board should act formally by resolution spread upon the minutes, still, as they had the power to act and the services were performed, and the board did in fact subsequently approve the bill for the services and order it paid, we know of no reason why the subsequent ratification and order of payment should not be treated as equivalent to previous authority regularly given.

3. It is claimed that the judgment against defendants for costs was error. Appellant cites several California cases where, the defendants being public officers, it was held that undertakings are dispensed with on appeal. Such was the case of *Lamberson v. Jefferds,* 116 Cal. 492. But it was there said: "Dispensing with the undertaking does not necessarily imply that a personal judgment for costs or damages may not be rendered."

Section 1095 of the Code of Civil Procedure provides that the applicant for *mandamus* may recover "the damages which he has sustained, . . . . together with costs." Section 1022 of the Code of Civil Procedure provides as follows: "Costs are allowed, of course, to the plaintiff, upon a judgment in his favor, in the following cases: . . . . 4. In a special proceeding." These provisions of the code we think are applicable to this case. Appellant cites *McDougal v. Roman,* 2 Cal. 80, where the defendant, in *mandamus,* was state treasurer, and the lower court awarded a peremptory *mandamus* and gave judgment against

him for costs. This court affirmed the award for the writ, but reversed the judgment for costs. The ground for this reversal is not stated. It could not have been because costs could not be awarded to plaintiff, for the provisions of the practice act, section 477, were the same as the code section 1095, *supra*, and the court affirmed the judgment for the writ with costs, i. e., the costs of the appeal as we assume. The case is meagerly reported and cannot, we think, be taken as authority to support appellant in his contention that costs cannot be awarded in a *mandamus* proceeding such as this. In *Tuolumne Co. v. Stanislaus Co.*, 6 Cal. 440, which was *mandamus*, appellant was taxed with costs by this court.

Mr. Merrill in his work on Mandamus, section 310, says that costs are awarded, or divided, or refused, as under the circumstances seems proper to the court; and that it has been considered to be such a matter of course to grant costs to the party ultimately succeeding, that very strong grounds will be required to induce the court to depart from the general rule. In *United States v. Schurz*, 102 U. S.407-8,which was *mandamus* to compel defendant, as secretary of the interior, to issue a patent, he was charged with costs upon a motion specially directed to that question. See note to the case page 407, where Mr. Justice Miller delivered the opinion of the court, in which he said that a careful examination of the authorities "leaves us no option but to follow the rule that the prevailing party shall recover of the unsuccessful one the legal costs which he has expended in obtaining his rights." (See 5 Ency. of Pl. & Pr., 151, 152.)

The judgment and order should be affirmed.

Haynes, C., and Searls, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

McFarland, J., Henshaw, J., Temple, J.