## In Re BEASON'S ESTATE.

No. 2932.   Decided November 28, 1916 (161 Pac. 678).

1. EXECUTORS AND ADMINISTRATORS—ALLOWANCES TO SURVIVING WIFE—SUFFICIENCY OF EVIDENCE. In a proceeding for an allowance to the surviving wife from the husband's estate, evidence *held* to sustain a finding that she did not voluntarily leave and live apart from him. (Page 25.)

2. APPEAL AND ERROR—THEORY OF DEFENSE ON APPEAL. Where an administrator objected to an allowance to deceased's wife solely because she had voluntarily lived apart from her husband, he cannot first raise on appeal the point that she had forfeited her right to the allowance by laches. (Page 26.)

Appeal from District Court, Second District; *Hon. N. J. Harris,* Judge.

In the matter of the estate of Charles M. Beason, deceased. Petition by Hattie F. Beason, as surviving wife, for an allowance pending the estate's administration. Judgment granting allowance, and the administrator appeals.

AFFIRMED.

*A. G. Horn* for appellant.

*S. T. Corn* and *Wade M. Johnson* for respondent.

STRAUP, C. J.

The petitioner, Hattie F. Beason, as the widow of Charles M. Beason, deceased, was granted out of the estate a family allowance of $50 a month for a year, or the sum of $600, pending the administration of the estate. The administrator appeals. He contends: (1) That the petitioner and the deceased for several years prior to his death had not lived together, and that he had not contributed to her support; and (2) that the petitioner, by lapse of time, had forfeited her right to an allowance.

As to the first, the court found that the petitioner "did not live separate and apart from the deceased at the time of his

death of her own accord, or without the consent of the deceased,'' and that their separation was due to the deceased's failure to provide for her. These findings, the administrator asserts, are not supported by, and are contrary to, the evidence.

The parties were married in April, 1907, and lived together at Ogden until in June, 1911. She then became ill and had pneumonia, and, on advice of her physician, went to California and remained there until 1913. She then returned to Ogden, and, after remaining there a short time, went to Denver, and there lived with her married daughter until the death of the deceased, which occurred in July, 1914. She also there was sick and had an operation performed at the hospital. It is not made to appear that she went to California without the consent, or against the objection, of the deceased. To the contrary, it is shown that he had intended, as soon as matters of his own could be straightened up, to go there himself and live with the petitioner. It was shown that he, though able to do so, had not contributed anything to the petitioner's support from 1911 until his death, and that during that time the petitioner was supported by her daughter and from a small inheritance—several hundred dollars—from her mother. It also was shown that the deceased was ''a heavy drinker and traveled about a good deal.'' The petitioner, while in California and in Colorado, wrote to the deceased every two or three weeks, and he at different times wrote to her. On the 1st of January, 1914, while at Denver, she, in response to a letter received from the deceased, wrote him:

''*   *   *   I am glad to know you have some one to keep house for you; how do you like your new daughter-in-law? I have seen by the papers that cattle are bringing a good price now and hope you will benefit by your bargains. You better let some one settle your business for you and not return to this high altitude. I am sure Tom could do as well as yourself. As to myself I have made no plans for myself but I am fully convinced that I must have a home of my own somewhere. I am tired being a wanderer. When I wrote you I would go to you and care for you when you were so ill I meant to do so till you were well again. As for us living together again it is

impossible. I mean to be perfectly plain with you and while we can be friends we certainly can be no more. I have made two trials and found out my mistake after years of unhappiness. Now, don't think I am writing with any malice. I have outlived all of this and now am just telling you the truth. There certainly should be some consideration for me I think. I did my part at all times, but was not appreciated. Don't blame the girls, they have nothing to do with that. I must do as you said. It is better as it is. I would like to live in California, but what little I have comes from Mabel and she don't want me to go out there alone so I can't bear the thought of going back to Ogden to live. * * * If I had any money I would go to California at once and settle myself. I do think you should give me what I need. Do you expect me to live on as Mrs. Beason and have to support myself? I have managed for three years, but it seems that I am entitled to some consideration, and you are generous enough with others, why not with me? You always seem to think it has been a hardship to do for me. You can write me here," etc.

This letter is pointed to by the administrator as proof of the petitioner's willful refusal to live with the deceased. When looked at alone it may show her declaration not to live with him, but even as to that was not conclusive of such an intention, nor that their living apart was her desire or her seeking. Against it are the declarations of the deceased that he, as soon as he could, intended to go to California and there live with her. And certainly it does not show that their living apart was willful on her part, or without cause, but rather indicates that their living apart was due to the deceased's fault.

We think the findings complained of are sufficiently supported by the evidence.

Now as to the other point. It is claimed that the petitioner, by lapse of time, forfeited her right to an allowance. The deceased died in July, 1914. An administrator was appointed and letters issued to him in August, 1914. The petitioner filed her petition for an allowance in April, 1915, less than a year from either the death of the deceased or the granting of letters of administration. It is claimed that the estate was insolvent, but no such finding was made and

no complaint that there is no finding on the subject.   To support appellant's contention he cites *Zunkel* v. *Colson*, 109 Iowa 695, 81 N. W. 175.   But the statute there limited the allowance to twelve months after the death of the deceased. Our statute (Comp. Laws 1907, Section 3846), is dissimilar, and more nearly like the California statute, where it has been held that the widow's delay in demanding her allowance does not forfeit her right thereto.   *In re Welch*, 106 Cal. 427, 39 Pac. 805; *In re Lux*, 100 Cal. 593, 35 Pac. 341.   But there was no such issue tendered.   The only objection pleaded by the administrator to the allowance was that the petitioner, without cause, of her own accord, and without the consent of the deceased, at the time of his death, and for a long time prior thereto, had lived separate and apart from him.   Not having tendered any issue as to delay or forfeiture on such ground, the administrator is not now, here for the first time, in position to urge such a defense.

We are therefore of the opinion that the judgment of the court below should be affirmed, with costs.

Such is the order.

FRICK and McCARTY, JJ., concur.