FOWLER et al. v. GILLMAN et al.

No. 4944. Decided July 23, 1930. (290 P. 358.)

*Geo. S. Ballif, W. S. Dunford,* and *Martin M. Larson,* all of Provo, for appellants.

*A. B. Morgan* and *M. R. Straw,* both of Provo for respondents.

STRAUP, J.

The plaintiffs, Fowler, a deputy county treasurer, and Davis and Coates, deputy county sheriffs, of Utah county, on their petition in the district court were granted a writ of mandate requiring the board of commissioners of that county to order paid, which they had refused to do, salaries of the plaintiffs for services rendered by them as such deputies and as certified to the board and approved by the county auditor. The commissioners appeal.

In November, 1926, J. D. Boyd was elected sheriff and John C. Taylor treasurer of Utah county for a term of four years commencing in January, 1927. The county has a board of county commissioners consisting of three members. In 1902 one was elected for a term of four years and two for two years, and thereafter every two years at a general election one was elected for a term of four years and one for

a term of two years. As soon as the sheriff and the treasurer qualified on the first Monday in January, 1927, and assumed the duties of their respective offices, they, in pursuance of section 1461, Comp. Laws Utah 1917, certified to the board of county commissioners appointments of deputies, including the plaintiffs, for confirmation by the board. The appointments were confirmed and at the same time the board fixed the salaries to be paid each appointee. In such particular the records of the commissioners recite that: "The following offices are created, and the salaries fixed for a term of one year: These appointments being made as of January 3, 1927, salaries effective as to new deputies, January 3, 1927, and as to old deputies, February 1, 1927." Then follows a recitation fixing the monthly salaries of each of the appointees confirmed by the board, including the monthly salary to be paid to each of the plaintiffs. The plaintiffs thereupon took and filed their oaths of office and qualified as by the statute in such case made and provided, and assumed the duties of their respective offices. On January 3, 1928, the board of county commissioners again confirmed the appointments of deputies, including the plaintiffs. The record of the board in such particulars is: "The following appointments are confirmed: Sheriff's Department as Deputy Sheriffs," designating six deputies, including the plaintiffs Davis and Coates. The record further recites: "All salaries for deputies to remain as they now are with the exception of B. F. Hooper and S. A. Willis, whose salaries shall be raised to $125.00 per month." A similar record is shown as to the confirmation of plaintiff Fowler as a deputy county treasurer. By such confirmation it is seen that neither the term of employment, nor the term of the monthly salary, of the plaintiffs, or of other deputies, was fixed or designated for any particular period or term. After such second confirmation the plaintiffs did not take or file a new oath of office but continued as theretofore in the discharge of their respective duties as deputies.

All went well without complaint, until after the general election of November, 1928, when a member of the old board was re-elected and a new member elected as county commissioners. There was one hold-over. So, on December 19, 1928, the two old members of the board in their individual capacity delivered to the sheriff and to the treasurer a written notice that they did not intend to confirm the plaintiffs as deputies for the next year and to govern themselves accordingly "in making up your list of deputies for the next year." In reply to that the sheriff in writing stated that his deputies Coates and Davis had been with him for a number of years and had proved themselves capable and efficient officers; that if there was anything to show that they were inefficient or neglectful in any particular or had done anything to justify their dismissal or dispensing with their services, the sheriff was willing to co-operate with the board; but that in the absence of some such showing, or other good cause, he, as a matter of service to the public and in harmony with his office, saw no reason for a dismissal of such deputies or the making of any change in such respect. No action was taken or reply made to that by any of the members of the board. On January 30, 1929, and after the newly elected members of the board had qualified, the chairman of the board by written notice notified the sheriff and the treasurer "that no deputy will be considered employed by Utah County, nor will there be any salary paid for services rendered, until such deputies are duly confirmed and their salaries fixed," and that the order would become effective February 1, 1929. The plaintiffs continued in office performing and discharging the duties thereof. On February 18, 1929, the sheriff addressed another communication to the board in which he recited the notices served on him December 19, 1928, and January 30, 1929, and in which he, among other things, stated that his deputies Coates and Davis had theretofore been confirmed and their salaries fixed for and during the term of the sheriff's office;

that such deputies were capable and efficient officers, had faithfully performed the duties of their office, and that they should not summarily be dismissed or discharged without knowing the nature of the charges, if any were to be made, and without an opportunity to be heard, and requested a special meeting of the board to inquire into such matters; and if anything was made to appear that such deputies were inefficient or otherwise unworthy to hold the office, he would readily join in the discharge of them. No reply was made to that and no hearing given.

So the matter stood until the last day of February or first of March, 1929, when the county auditor certified to the board a pay roll of the officers of the county, including the plaintiffs, and who during the month of February had been in the service of the county, which pay roll was audited and approved by the auditor as by law required and presented to the board for its approval. The board approved and ordered paid all of the pay roll as presented, including all of the deputies of the sheriff's office and of the treasurer's office except the plaintiffs whose names were stricken from the pay roll and the auditor directed not to pay any of the salaries of either of the plaintiffs or to issue any warrant therefor. The salaries of all other deputies were ordered paid, though not confirmed by the present members of the board any more than were the plaintiffs confirmed by them. The plaintiffs were not at any time dismissed or discharged from service, either by the board or by the county officers appointing them. They remained in office during the whole of the month of February just as they were during the month of January, performing and discharging the duties of the office. The offices themselves were not abolished nor vacated. No claim is made that the services of the plaintiffs were no longer necessary or required. Nor is there any claim made that such deputies or any of them was inefficient or in any particular incompetent, neglectful, or unworthy. The court found, and the evidence shows, that

their names were arbitrarily and without cause stricken from the pay roll and their salaries ordered not paid. One of the commissioners, and who was most active in the transactions, testified that "the commission acted arbitrarily," and that the course pursued by him and another commissioner acting with him, and who constituted a quorum of the board, was to oust the plaintiffs from office and to discontinue their service, and "that was the intended effect so far as we were concerned."

In defense of the acts so pursued by such majority members of the board, it is urged that under the statute (section 1461) a confirmation of the appointment of the plaintiffs was a prerequisite to entitle them to hold the office and to demand compensation for services rendered, and that no such confirmation was had after January, 1929, when, as it is claimed, the new board of county commissioners was reorganized. The section provides that "Every county * * * officer, may, by and with the consent of the board of county commissioners, appoint as many deputies and assistants as may be necsessary for the prompt and faithful discharge of the duties of his office. The appointment of a deputy must be made in writing, and filed in the office of the county clerk, and, until such appointment is so made and filed and until such deputy shall have taken the oath of office, no one shall be or act as such deputy." In such connection it is urged by the commissioners that when the plaintiffs were appointed by the county sheriff and the county treasurer in January, 1927, and their respective appointments confirmed, such appointments were only for a term of one year. The trial court, in effect, held that such appointments were for and during the term of office of the sheriff and of the treasurer, which was for four years from January, 1927, and that the amount of the monthly salary, and not the period or term of appointment, was fixed for one year. Let that be as it may, for admittedly the plaintiffs, among other deputies, in January, 1928, were each confirmed by

the board with the same salary theretofore fixed and without specifying or designating any definite term or period, which the trial court construed as an appointment and confirmation for and during the remainder of the term of office of the sheriff and of the treasurer, or rather considering the two confirmations together, as an appointment and confirmation for and during the term of office of the sheriff and of the treasurer.

It is the contention of the commissioners that the trial court erred in such particular and that the plaintiffs to be legally entitled to the office required an appointment and confirmation at the beginning of each year, and unless so appointed and confirmed, they were neither de facto nor de jure officers, and hence were not entitled to any compensation for whatever services may have been rendered by them after January 3, 1929, or even after January, 1928, because they had failed to take and file a new oath of office. The commissioners put the proposition thus:

"1. Can a person acquire a public office, as deputy county sheriff or deputy county treasurer, if his appointment is not confirmed by the board of county commissioners?

"2. Where the principal in a county office submits the appointment of a deputy to the board of county commissioners without fixing the term for which the appointment is made, can the county commissioners in confirming the appointment fix or limit the term for which the appointee is confirmed?

"3. Can one board of county commissioners in appointing public officers, over which they have supervisory control, make or confirm appointments for a term beyond their own office so as to bind the new and succeeding board of county commissioners by their act, and foreclose the new board of any power or control or authority?"

The first question, abstractly, may well be answered in the negative. But the question is propounded on the implied assumption that the plaintiffs were required to be appointed and confirmed at the beginning of each year, or at least every two years, which is another matter. Abstractly, the second question may be answered in the affirmative. But

it also is propounded on the implied assumption that the confirmation of the plaintiffs was fixed for a term of only one year, which is a controverted fact. The third question as propounded is confusing, and also on the implied assumption that the board of county commissioners not only confirms appointments, but itself makes appointments; and upon the further assumption that the board itself as such has a term of office which lasts only for one year, or no longer than two years, matters to be further considered.

It is the contention of the plaintiffs, and the trial court in effect so held, that the appointment and confirmation of a deputy, unless otherwise restricted or designated, continues for and during the term of the county officer making the appointment, unless the office of the deputy, or the appointment itself otherwise, is terminated; and that when so appointed and confirmed, he may not summarily and without cause be dismissed or discharged by the board itself, either directly or indirectly, for a summary dismissal or discharge is the prerogative of the officer making the appointment, and not the prerogative of the board. *Sheriff of Salt Lake County* v. *Board of Commissioners* (Utah) 268 P. 783. The reasons why a summary dismissal or discharge is the prerogative of the county officer under whom the deputy serves, and not of the board, are there stated. Should, therefore, this case be regarded as but an effort on the part of the board to summarily and without cause dismiss or discharge the plaintiffs or remove them from office, if properly appointed and confirmed, the judgment of the court below, on the authority of *Sheriff of Salt Lake County* v. *Board of Commissioners,* requires an affirmance. On the record there is no doubt that the intended effect of the course pursued by a majority and quorum of the board was to cause a summary dismissal or discharge of the plaintiffs. The commissioners in substance do not deny that. Were such the only question involved, an affirmance of the judgment would thus readily follow.

However, the propositions presented involve something more. It is the contention of the appellants that the plaintiffs in 1927 were confirmed for only one year, and that to legally entitle them to hold the office required them to be again appointed and confirmed, and each to take a new oath of office; and that while they were confirmed by the board in January, 1928, yet the plaintiffs, failing to take and file a new oath of office, were not entitled to legally hold the office or to the emoluments thereof after January, 1928. Texts and cases are cited to the claimed effect that one of the usual necessary formalities for the qualification of an officer is the taking of the official oath, and that one, either elected or appointed to office, who does not take the required oath, does not possess the legal title to the office; and though the official acts performed by an officer without taking the oath may be regarded as acts of a de facto officer and valid as to strangers or as to the public or as to third persons who have an interest in the acts done, nevertheless such an officer may not himself claim the benefit of the acts nor the emoluments of the office. In support of that 29 Cyc. 1386, 22 R. C. L. 448, *State ex rel. Egan* v. *Schram,* 82 Minn. 420, 85 N. W. 155, and other cases are cited. The texts support the proposition that to entitle one elected or appointed to office to legally hold the office is required to take the official oath; but where there is no de jure officer, the texts do not go to the extent claimed, that a de facto officer who in good faith possessed and performed and discharged the duties of the office is not entitled to the emoluments thereof. The case of *State ex rel. Egan* v. *Schram* and other cases may be said to go to that extent. The cases so holding proceed on the theory that the right to the emoluments of the office rests upon the legal title to the office. There are, however, cases to the contrary which proceed on the theory that where there is no de jure officer, a de facto officer, who in good faith possessed the office and discharged the duties pertain-

ing thereto, is entitled to the emoluments of the office. This court is committed to such latter doctrine. *Peterson* v. *Benson*, 38 Utah 286, 112 P. 801, 32 L. R. A. (N. S.) 949, Ann. Cas. 1913B, 640. And then, inasmuch as the plaintiffs when first appointed and confirmed in January, 1927, took the official oath of office, there is the further question of whether such appointments were only for one year and as to whether the plaintiffs were required to take a new oath of office on the second confirmation of 1928. The case is not like one where there was no official oath taken or filed. Not until this lawsuit was commenced was there any claim made by the commissioners, or by any one, that the plaintiffs were not legally entitled to hold the office and to the emoluments thereof for the entire year of 1928 and for January, 1929, and without objection on behalf of any one, the plaintiffs by the board were ordered paid and were paid salaries for such period. What the commission by their notice to the sheriff and to the treasurer indicated was that the plaintiffs would not be paid any salary after February 1, 1929, unless they were reappointed and reconfirmed by the then board, which a majority of the board clearly indicated it would not do and which course was so pursued to effect a summary dismissal or removal of the plaintiffs.

In this connection it further is urged that the board of county commissioners is in effect reorganized and becomes a new board every two years, and that in no event could an appointment and confirmation have any legal effect for a period or term longer than or beyond the term of any member of the board making the confirmation; here, no longer than January, 1929, since in the fall of 1928 one of the commissioners was re-elected and a new member elected who took office in January, 1929. To support that, cases are cited to the effect that a board of county commissioners has not the power to bind its successors by employing an attorney to act for the board for a period beyond the time when the board by operation of law would have to be reor-

ganized (*Board of Commissioners of Jay County* v. *Taylor,* 123 Ind. 148, 23 N. E. 752, 7 L. R. A. 160, but as to that let the case of *Board of Commissioners* v. *Shields,* 130 Ind. 6, 29 N. E. 385, 386 be noticed); that a board of supervisors cannot contract with one for a specified time in such a way as to deprive itself or its successors of the power of removal (*State* v. *Platner,* 43 Iowa 140); that a contract for the employment of a keeper of the county poorhouse for three years is not within the power of the board of supervisors, each of whom is elected for one year only, although the statute gave the board power to appoint such keeper without any express limitation as to time (*Millikin* v. *Edgar County,* 142 Ill. 529, 32 N. E. 493, 18 L. R. A. 447). Additional cases also are cited to the effect that a contract entered into or an appointment made by a board of county commissioners or supervisors and relating to mere governmental functions cannot be extended beyond the life of the board. Apparently the cases cited relate to such contracts or appointments made directly by the board, which here is not the case. *Sheriff of Salt Lake County* v. *Board of County Commissioners.*

It, however, is urged that the same principle applies where the appointment is made by another and requiring confirmation by the board or other body. To support that, 22 R. C. L. 553 is cited. The text is:

"The common law forbids that an officer clothed with authority to make appointments to a public office shall forestall the rights and prerogatives of his successor, by making a prospective appointment to fill an anticipated vacancy in an office, the term of which cannot begin until after his own term and power have expired."

To support that, the cases of *State* v. *Sullivan,* 81 Ohio St. 79, 90 N. E. 146, 26 L. R. A. (N. S.) 514, 18 Ann. Cas. 139 and *State* v. *Peelle,* 124 Ind. 515, 24 N. E. 440, 8 L. R. A. 228, are cited. The text above quoted is in the language of the syllabus of *State* v. *Sullivan.* We think neither the text nor the cited cases help the appellants. They involve an entirely different situation. In *State* v. *Sullivan,* Andrew

L. Harris, Governor of Ohio, whose term of office expired January 11, 1909, on January 4, 1909, when there was no vacancy, appointed James C. Morris a member of the railroad commission for a term of six years commencing on the first Monday of February, 1909. The appointment on the same day was confirmed by the Ohio Senate. At noon on January 11, 1909, Judson Harmon became Governor of Ohio. He disregarded the appointment made by his predecessor, and on January 21, 1909, appointed John Sullivan a member of the commission for and during the same term for which Morris had been appointed. That appointment also was confirmed by the Senate. Sullivan qualified and took possession of the office. Morris by quo warranto questioned and claimed the right to the office. The holding of the Supreme Court was that the appointment of Morris was unauthorized. Had the county officers here appointed a deputy to take effect after their terms of office had expired or for a period beyond the expiration thereof, the Ohio case would be applicable. But such is not the situation.

The case of *State* v. *Peelle* is still less applicable. There Peelle by the Legislature in 1883 was elected chief of the bureau of statistics and the election certified to Governor Porter, who appointed and commissioned Peelle to such office. Peelle qualified and took possession of the office. In 1885 he was re-elected by the Legislature and again appointed and commissioned by Governor Gray, who succeeded Governor Porter in office. Peelle thus continued in office discharging the duties thereof. Thereafter, a successor of Governor Gray in office, considering that the act of the Legislature under which Peelle was elected was unconstitutional and by reason thereof a vacancy existed in the office, appointed John Worrell to the office, who brought proceedings for the removal of Peelle and to put Worrell in possession. Peelle was ousted and Worrell declared the rightful claimant to the office. One of the contentions there was as to the validity of the act; the other, and the chief contention

asserted on the one side and denied on the other, was that the Governor in fact had himself appointed and commissioned Peelle, who in legal effect was appointed by the same authority and power and under the same circumstance that Worrell was appointed and commissioned. The majority members of the court held against such contention. But with respect thereto, strong dissenting opinions were filed by Chief Justice Mitchell and by Justice Elliott. However, we do not see wherein the prevailing holding in that case in any particular makes, for the appellants in the case in hand.

In the cited text, 22 R. C. L. 553, the author further says:

This rule is applied, not only where the appointing power is lodged in a single officer, but also where it is lodged in a board the personnel of which is changed by the expiration, before the term of the appointee commences, of the term of one or more of the persons composing such board."

To support that, the note to 18 Ann. Cas. 142, the Ohio case, is cited. The note is:

"An appointment to a public office, the term of which does not begin until after the expiration of the term of the appointing power, is not valid; or, as the rule is sometimes stated, an appointment to public office in anticipation of a vacancy therein is valid only if the appointing officers are still in office when the vacancy occurs."

The proposition may well be conceded. However, as already several times observed, in the case in hand, it is not the board of county commissioners which makes or is authorized to make the appointments under consideration. *Sheriff of Salt Lake County* v. *Board of County Commissioners.* No appointment was made by the sheriff or by the treasurer and no appointment confirmed to take effect or to continue after the term of office of the county officer making the appointment had expired. Let it be assumed that neither could do so.

The cited cases do not support the contention that a con-

firmation and appointment may not be made for a term or period beyond the term of office of any of the members of the board making the confirmation. Some of the cases cited by the appellants, especially the case of *Webb* v. *Spokane County,* 9 Wash. 103, 37 P. 282, make against their contention. In that case it is held that where a physician was employed for the term of one year by the county commissioners to attend the poor of the county and accepted the employment and entered upon the discharge of his duties, the contract could not be afterwards rescinded by the county, although extending for a period beyond the terms of the commissioners making it. The case proceeds on the theory that the board of commissioners is a corporation representing the county, and though successive changes in the personnel of the board may result, yet from a legal standpoint, the board is a continuous body and its actions that of the board and not of its individual members. To that effect also is the case of *Board of Commissioners* v. *Shields,* supra. To affirm the judgment we need not and now do not go to the extent of holding that the board is a continuous body.

The rule deduced by us is this: Where an appointment of a deputy is made by a county officer as by the statute provided and the appointment confirmed without limitation as to time, the appointment continues for and during the term of office of the county officer making the appointment, unless the office is sooner abolished or vacated, or the services of the deputy no longer required, or where the deputy is shown to be incompetent, inefficient, or neglectful in the discharge of his duties or has been guilty of misconduct or of wrongful or unlawful acts, or where his dismissal is justified or warranted for other good cause; but that he may not by the board, either directly or indirectly, summarily and without cause, or arbitrarily, be dismissed or discharged during the term of office of the county officer appointing the deputy. The trial court upon all before him took the view that the period designated by

the board in January, 1927, related only to the salary as then fixed, and not to the period or term of the appointment itself, and that it was so thereafter considered and treated by the board when the second confirmation was made in January, 1928, without limitation, and so thereafter was treated and regarded by the board and the salaries ordered paid by it to the plaintiffs without question or objection, until just before the commencement of this action. We are therefore of the opinion that the writ was properly issued and that the judgment should be, and it accordingly is, affirmed.

There is another question presented as to costs. On the theory that two of the county commissioners and constituting a quorum of the board acted arbitrarily and capriciously in the premises, the court rendered a judgment against them in their individual capacity for costs. Complaint is made of that. It is urged that since the defendants were sued in their official and not in their individual capacity, and as it is claimed "there are no allegations in the pleadings by which individual liability of any of the appellants is brought before the court," awarding costs against the appellants individually was without the issues. To support that, *Evans* v. *Shand* (Utah), 280 P. 239, *Beason's Estate*, 49 Utah 24, 161 P. 678; 2 R. C. L. 79; and 3 C. J. 718, are cited. Such cases and authorities are to the point that adjudications must be within the issues, that recovery must be secundum allegata et probata, and that on appeal the parties are restricted to the theory of the case as by the pleadings presented and tried to the court below. The principle invoked has no application to the matter in hand. Costs are but allowances to reimburse the successful party for expenses incurred in presenting or defending an action or special proceeding. They are not the subject of the litigation. When prayed for and allowed they are a mere incident to the judgment to which they attach. 15 C. J. 19.

It was alleged and denied that the appellants' striking the names of the plaintiffs from the pay roll and directing the auditor not to pay the salaries or issue any warrant therefor were without just cause or excuse and were "wholly arbitrary, wrongful and unlawful." The court found the issues in favor of the plaintiffs and found that the appellants "wrongfullly and unlawfully conspired together to force the retirement of the plaintiffs from their respective offices," and in pursuance thereof and to force the plaintiffs from office, disallowed payments of their salaries, and ordered and directed the auditor not to pay them. Such findings are sufficiently supported by the evidence. They show not only capricious and arbitrary conduct, but bad faith as well.

In the absence of a statute, costs in mandamus proceedings may be awarded or withheld in the discretion of the court. But where under statutory provisions the prevailing party is entitled to recover his costs as a matter of course, the question of recovery is not confided to the court's discretion, and where mandamus is regarded as a civil remedy, costs are awarded as in ordinary civil actions. When a public officers is required by law to perform a ministerial act and has neglected or refused to do so, he may be held personally liable for costs; otherwise the relator or applicant is compelled to bear the expenses of the proceeding which he is forced to bring for the purpose of obtaining what he in law is entitled to without suit. These views are expressed in 5 Bancroft's Code Pr. & Rem. 5238-5241. They also are supported in 16 Cal. Jur. 880 and 38 C. J. 952. Among the numerous cases cited supporting the texts are *U. S.* v. *Schurz,* 102 U. S. 378, 407, 26 L. Ed. 219; *Power* v. *May,* 123 Cal. 147, 55 P. 796; *Smith* v. *McCallum,* 36 Cal. App. 143, 172 P. 408; *State ex rel. Middlebrook* v. *Reid,* 17 Wash. 267, 49 P. 517; *State ex rel. Stephens* v. *Corporation Commission,* 25 N. M. 32, 176 P. 866; *State* v. *Carlson,* 72 Neb. 837, 101 N. W. 1004; *Dickey* v. *State ex rel.,* 90 Okl. 106, 217 P. 145; *State ex rel.*

*Shea* v. *Cocking,* 66 Mont. 169, 213 P. 594, 28 A. L. R. 772.
In *U. S.* v. *Schurz,* supra, Mr. Justice Miller said:

"Our first impression was that as the defendant was sued in regard to the manner in which he had discharged certain official duties as Secretary of the Interior, in which no intentional wrong was charged or proven against him, it would be unjust to make him pay the costs of the. proceeding out of his own pocket. But a careful examination of the authorities leaves us no option but to follow the rule that the prevailing party shall recover of the unsuccessful one the legal costs which he has expended in obtaining his rights."

Bancroft, however, further says that many courts hold that the officer is protected by being relieved of costs so long as he acts reasonably and in good faith and with the intent of protecting public interests, even though wrong in his refusal to perform the required acts; but if he acts capriciously or arbitrarily or unfairly he becomes a wrongdoer and so subject to all the liabilities of a wrongdoer. To what extent the cases cited in support of the text were influenced or controlled by statutory provisions, we need not now inquire, for the finding here is that the appellants acted capriciously and arbitrarily and, in effect in bad faith, in a conspiracy.

We have statutes on the subject. The general statute, Comp. Laws Utah, 1917, § 7036, relating to costs, provides that: "Costs are allowed of course to the prevailing party in the following cases: * * * 4. In a special proceeding." Thereunder, in the case of *Page* v. *Utah Commission,* 11 Utah 119, 39 P. 499, it was held that mandamus is a "special proceeding" and that the relator or petitioner who prevailed was entitled to his costs though the officers against whom the writ was directed acted in good faith. Such is also the holding in the cases heretofore cited. We have also a special statute, Comp. Laws Utah, 1917, § 7401, which in mandamus proceedings provides that if judgment be given for the applicant he may recover damages and costs. Under such a statute the holdings in effect are that if judgment be given in favor of the applicant he is

entitled to costs as matter of course. 16 Cal. Jur. 880; *Gould* v. *Moss,* 158 Cal. 548, 111 P. 925; *Franscioni* v. *Soledad L. & W. Co.,* 170 Cal. 221, 149 P. 161; *Peacock* v. *Superior Court,* 163 Cal. 701, 126 P. 976; *Power* v. *May,* supra; *State ex rel. Shea* v. *Cocking,* supra; *Smith* v. *McCallum,* supra.

In *Argyle* v. *Wright, County Auditor,* 63 Utah 184, 224 P. 649, where in mandamus judgment was for the applicant he was given his costs. In *Sheriff of Salt Lake County* v. *County Commissioners,* where the petitioners were granted a writ of prohibition, no costs were awarded. In *Board of Education* v. *Burgon,* 62 Utah 162, 217 P. 1112, where the applicant in mandamus proceedings was given judgment, not anything was said as to costs. In none of such cases was the question of costs presented, urged, or challenged. There may be other Utah cases to the same effect. In mandamus, prohibition, and other provisional remedies against a judge or court, it has been the policy in this jurisdiction not to allow costs against the court or judge. *State ex rel. Porter* v. *Ritchie,* 32 Utah 394, 91 P. 24; *Oregon Short Line R. Co.* v. *District Court,* 30 Utah 371, 85 P. 360; *State ex rel. Burt* v. *District Court,* 39 Utah 1, 114 P. 143; *State ex rel. Aldrach* v. *Morse, District Judge,* 31 Utah 213, 87 P. 705, 7 L. R. A. (N. S.) 1127. There may be other Utah cases to the same effect. They proceed on the theory that a judge who falls by the wayside through the wiles of a litigant or of his counsel should not be mulcted in costs and that to do so is contrary to fundamental rules protecting freedom of judicial action, but that costs should be taxed against the party who induced or defended the court's action, if he appears or is brought in the provisional remedy cause, and who in such particular and not the judge is regarded the real party in interest. *Salt Lake Inv. Co.* v. *Fox,* 38 Utah 309, 112 P. 808. We but recently held that in the case of *Smith* v. *Kimball, District Judge,* 289 P. 588. The doctrine is also recognized and announced in *State ex rel. Middlebrook* v. *Reid,* supra, in 5 Bancroft Code Pr. & Rem. 5240, and in 38 C. J. 953. We, however, need not further digress as to that.

In *Towler* v. *Warenski*, 59 Utah 532, 205 P. 330, it is said:

"Moreover, the practice in this court in taxing and serving bills, whether original or mandamus proceedings against a judge or public officer costs are in the discretion of the court."

The statement is dicta, as is readily seen from a reading of the case and the matters before the court. Further, the statement so broadly and unqualifiedly made is inaccurate. We again need not digress as to that, nor here undertake to state when the allowance of costs in a provisional remedy cause is or is not discretionary, or to lay down any general rule with respect to costs in all proceedings of provisional remedies.

We, however, lay down this rule: Where, in a proceeding of this nature against a public officer, he arbitrarily or capriciously and in bad faith, as here found, neglected or refused to perform a duty by law enjoined upon him and resulting from his office, and the party beneficially interested is put to costs in bringing a proceeding to compel the performance of the duty and prevails therein, the public officer is himself liable for costs. The point made that the judgment for costs should not go against the appellants personally because they were sued in their official capacity and not as individuals is not tenable. In 38 C. J. 954, the author states:

"The general rule is that public officers are personally liable for costs incurred in mandamus proceedings to compel them to perform duties which they are required by law to perform."

Numerous cases, including *U. S.* v. *Schurz,* supra, *Power* v. *May,* supra, *State ex rel. Shea* v. *Cocking,* supra, are there cited. To that effect also is 5 Bancroft Code Pr. & Rem. 5240. In a proceeding against a public officer to compel him to perform a required and demanded duty which he refused to perform, it is he and no one else who controls the defense in such particular. Hence, if the applicant prevails,

the costs naturally ought to go against him who wrongfully refused to perform the required and demanded duty. Costs in such case may not be awarded against the county or other municipal body, or ordered paid out of county or municipal funds (*State ex rel. Shea* v. *Cocking,* supra, for in such case the county or other municipal body is not liable for such acts or omissions of the public officer or officers), and especially could costs here not be awarded against the county since it is not a party to the cause.

Thus it follows that the judgment for costs in the court below also is affirmed. We on this appeal also allow all taxable costs to the respondent and against the two commissioners against whom costs were allowed in the court below and who prosecuted this appeal.

CHERRY, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and FOLLAND, JJ., concur.